Receipt #062402

ORIGINAL

FILED
FEB 2 8 2005
U.S. COURT OF
FEDERAL CLAIMS

ECF

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

KEVIN TRUDEAU, an individual,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No.: 05- 263C

**COMPLAINT FOR BREACH OF CONTRACT**

For his breach of contract complaint in this action, Kevin Trudeau, by his attorneys, alleges as follows:

**Nature of the Action**

1. This is an action for breach of contract by Plaintiff Kevin Trudeau ("Trudeau") against the United States Government. The contract at issue was entered into by Kevin Trudeau and the United States Government on September 2, 2004 when they signed a written stipulation [hereinafter the "Agreement"] settling all claims in an action entitled Federal Trade Commission v. Kevin Trudeau, *et al.*, Civ. Nos. 98-C-0168 and 03-C-3904, then pending in the United States District Court for the Northern District of Illinois. An essential bargained-for element of the Agreement was the express understanding and promise by the Government that Kevin Trudeau, by settling the action and entering into the Agreement, was not admitting any fault, wrongdoing, or liability. The Government promised and agreed in the Agreement that "[Trudeau] … expressly den[ies] any wrongdoing or liability for any matters alleged in the

[FTC's] Complaint and the civil contempt action." The Government further promised and agreed that, with the exception of a collateral civil contempt action, "[t]here have been no findings or admissions of wrongdoing or liability by [Kevin Trudeau]."

2. Every contract with the United States Government carries with it an implied covenant of good faith that prevents one party from taking action that deprives the other party of explicitly bargained-for benefits. Morris v. United States, 39 Fed. Cl. 7, 14 (1979). Here, the United States Government breached that implied covenant of good faith when the Federal Trade Commission ("FTC") staff, with intent to injure Trudeau, issued a press release on September 7, 2004 announcing to the world that a court order had been entered a finding that Trudeau had engaged in the wrongdoing alleged in the FTC's Complaint and that Trudeau was a "habitual false advertiser" who had "misled American Consumers for years." This press release, which remains prominently posted in the FTC's website, was false. It effectively deprived Trudeau of the bargained-for benefits of the Agreement; it constituted a material breach of the Agreement; and it has caused Trudeau substantial financial injury.

**Parties and Jurisdiction**

3. Plaintiff Kevin Trudeau is an individual with a principal address at 601 Del Oro, Ojai, California 93023.

4. Defendant is the United States of America (the "Government"), acting through the United States Federal Trade Commission ("FTC").

5. Trudeau entered into a contract delineated herein with the FTC on or about September 2, 2004.

6. This action arises under the Tucker Act, 28 U.S.C. § 1491, which grants this Court jurisdiction over claims founded on express or implied contracts between the United States and private parties, including contracts between private parties and the FTC.

**The FTC Lawsuits**

7. The FTC initiated lawsuits against Trudeau and others in the United States District Court for the Northern District of Illinois entitled "Federal Trade Commission v. Kevin Trudeau, *et al.*, Civ. No. 98-C-0168 and Civ. No. 03-C-3904" [collectively the "FTC Action"]. In the FTC Action, the FTC alleged, inter alia, that Trudeau had violated Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, by engaging in false advertising practices that misled American consumers.

8. After more than a year of litigation, the FTC and Trudeau agreed to resolve all matters arising in the FTC Action without an admission of wrongdoing or liability by any of the defendants, including Trudeau. To settle the FTC Action, Trudeau and the FTC entered into a written settlement agreement called a Stipulated Final Order for Permanent Injunction and Settlement of Claims (the "Agreement"). The Agreement was entered in the District Court on September 2, 2004, becoming the final order of the court. A true and correct copy of the Agreement is attached hereto as Exhibit A.

9. With the exception of a reference to a prior contempt finding that has no bearing on this matter, Trudeau admitted to no wrongdoing or liability. The Agreement expressly provides that "[t]here have been no findings or admissions of wrongdoing or liability by the Defendants or Relief defendants other than the finding against Kevin Trudeau for contempt of Part I of the Stipulated Preliminary Injunction, entered by the Court on June 29, 2004." Agreement ¶ 8.

**The FTC Breaches the Agreement**

10. Notwithstanding the FTC's promise and agreement that Trudeau, by settling the FTC action, was not admitting any liability to the FTC, on or about September 7, 2004, effectively advised the media that Trudeau had been found liable for wrongdoing (the "FTC Press Release"). The FTC Press Release, entitled "Kevin Trudeau Banned From Infomercials", referred to Trudeau as a "habitual false advertiser" who had "misled American consumers for years." Specifically, the Press Release included the following statement:

> This ban is meant to shut down an infomercial empire that has misled American consumers for years," said Lydia Parnes, Acting Director of the FTC's Bureau of Consumer Protection. "Other habitual false advertisers should take a lesson; mend your ways or face serious consequences.

A true and correct copy of the FTC Press Release is attached hereto as Exhibit B.

11. In fact, Trudeau is not "banned" from infomercials and there was no finding that he misled American consumers for years, that he engaged in false advertising, either habitually or otherwise, or that he engaged in other practices claimed in the FTC's Press Release. Although the FTC may have alleged those things, there was no adjudication to that effect and, in the end, the FTC dropped its charges against Trudeau in favor of the Agreement which expressly provided that "[t]here have been no findings or admissions of wrongdoing or liability by [Kevin Trudeau]."

12. Despite the fact that the FTC's allegations were never proven and certainly never agreed to by Trudeau or adopted by any court of law, the FTC issued its false and misleading Press Release in an attempt to injure Trudeau's business interests and thereby obtain what it had not obtained in court.

13. The FTC's Press Release does not withstand scrutiny under the FTC's own standards and rules for advertising. As explained in the FTC's *Deception Policy Statement*, an ad is deceptive if it contains a statement -- or omits information -- that is likely to mislead consumers acting reasonably under the circumstances and is "material" or important to a consumer's decision to buy or use the product. See FTC *Policy Statement on Deception*, appended to Cliffdale Associates, Inc., 103 F.T.C. 110, 174 (1984). A statement also may be deceptive if the publisher does not have a reasonable basis to support the claim. See FTC *Policy Statement on Advertising Substantiation*, appended to Thompson Medical Co., 104 F.T.C. 648, 839 (1984), aff'd, 791 F.2d 189 (D.C. Cir. 1986).

**The Harm to Trudeau**

14. The FTC Press Release has been widely reported and is prominently available on the internet. As of the date of this Complaint, the FTC Press Release is still posted on the FTC website at http://www.ftc.gov/opa/2004/09/trudeaucoral.htm. The FTC has failed and refused to remove the Press Release, despite demands from Trudeau to do so.

15. A person searching the internet for information on Trudeau likely will find information relating to the FTC's contention that he is a "habitual false advertiser" and that he allegedly ran "an infomercial empire that has misled American consumers for years." In fact, the FTC Press Release is prominently available to anyone seeking information about Trudeau. As of the date of this Complaint, a search of "Kevin Trudeau" on the popular search-engine "Google", returns the FTC Press Release, with its characterization of Trudeau as a "false advertiser," as the second non-sponsored link."

16. A person specifically searching the internet for information relating to the claims that Trudeau is a false advertiser is not likely to have much difficulty, thanks to the FTC

Press Release. A Google search of the terms "Kevin Trudeau" with the words "false" and "advertise" which are key words in the FTC Press Release, returns over 800 links to various websites. Over 100 of those links include the word "habitual", a word that first appeared in articles and messages about Trudeau only after the FTC Press Release referred to him as a "habitual false advertiser."

17. Because Trudeau is a well known personality, the press took an immediate interest in the story about his settlement with the FTC. Unfortunately, many of these media outlets appear to have relied primarily, if not entirely, on the FTC's Press Release and its characterization of Trudeau as a "habitual false advertiser." The FTC knew and intended that this would occur.

18. Newspapers and other media across the country reported on the resolution of the FTC's case against Trudeau. Stories appeared on CNN, WTOP Radio and in the New York Times, Los Angeles Times, and the Washington Post, among others. And, several of these stories took words directly from the FTC Press Release to characterize Trudeau as a "habitual false advertiser."

19. The Associated Press ran a story about Trudeau on its newswire on September 7, 2004 in which it adopted the FTC's characterization of Mr. Trudeau as a "habitual false advertiser."

20. The Associated Press story was picked up by numerous media outlets, many of which maintain archives that are available for viewing on the internet. For example, the Pittsburgh Post-Gazette ran the AP story on September 8, 2004. And, the story is still available on the Post-Gazette website at http://www.pittsburghpost-gazette.com/pg/04252/375413.stm.

21. The Lexington (KY) Herald Leader picked up the AP story about Trudeau on September 7, 2004 and a reader can still find the article, with the use of the term "habitual false advertiser" at http://www.kentucky.com/mld/ kentucky/9604510.htm.

22. Numerous other newspapers throughout the country ran the same AP story that characterized Trudeau as a "habitual false advertiser." Stories appeared in Ft. Wayne, Indiana (*Journal Gazette*, September 7, 2004); Monterey, California (*Monterey Herald*, September 7, 2004); State College, Pennsylvania (*Centre Daily Times*, September 7, 2004); Charlotte, North Carolina (*Charlotte Observer*, September 7, 2004); Wichita, Kansas (*Wichita Eagle*, September 7, 2004); Duluth, Minnesota (*Duluth News Tribune*, September 7, 2004); Tallahassee, Florida (*Tallahassee Democrat*, September 7, 2004) and Myrtle Beach, South Carolina (*Sun Herald*, September 7, 2004) among others. As of the date of this Complaint, copies of stories characterizing Trudeau as a "habitual false advertiser" remained viewable on the websites for each of the listed publications and many others.

23. Even outlets that did not use the AP story last September, ran their own versions of stories about Trudeau after the FTC issued its press release. For example, PR Newswire posted a press release on its website that referred to the FTC's case against Trudeau (the "PR Newswire Release"). Like the AP story and others, the PR Newswire Release referenced language contained in the FTC Press Release. For example, in its headline the PR Newswire Release stated that "False health claims earn 'habitual false advertiser' Kevin Trudeau unprecedented FTC ban." As of the date of this Complaint the PR Newswire Release is still posted on the PRWeb website at http://www.prweb.com/releases/ 2004/9/prweb156557.ht.

24. At about the same time a website called "ConsumerAffairs.com" posted a story about Trudeau. Again, the ConsumerAffairs.com story referenced language contained in the FTC Press Release, including the following quotation:

> This ban is meant to shut down an infomercial empire that has misled American consumers for years," said Lydia Parnes, Acting Director of the FTC's Bureau of Consumer Protection. "Other habitual false advertisers should take a lesson; mend your ways or face serious consequences.

As of the date of this Complaint the ConsumerAffairs.com story is still posted on the ConsumerAffairs.com website at http:// www .consumeraffairs.com /printme. php?url =/ news 04 /trudeau_informercials.html.

25. Trudeau is the author of a number of publications and learning aids, including the best-selling books, *Kevin Trudeau's Mega Memory: How to Release Your Superpower Memory in 30 Minutes or Less a Day and Natural Cures "They" Don't Want You to Know About.*

26. Trudeau's livelihood depends upon his ability to sell his various books and other publications. Public perceptions are highly relevant to sales of Trudeau's books and other publications. The belief of members of the public that Trudeau is a "habitual false advertiser" and that his infomercial empire has allegedly misled American consumers for years has adversely affected sales of Trudeau's books and publications, causing Trudeau significant monetary damages in an amount to be proved at trial. These monetary damages are the proximate result of the Government's breach of the Agreement.

27. On February 16, 2004, Trudeau's counsel requested the FTC to remove the misleading press release from its website and to issue and disseminate a corrective retraction. A copy of that request is attached hereto and incorporated herein as Exhibit C.

28. On February 22, 2004, the FTC responded. It stated in part that "nothing in the press release refers to any 'findings' of fact or law" and disputed such an inference could reasonably be drawn from the press release. It refused to take any of the requested actions. A copy of that response is attached hereto and incorporated herein as Exhibit D.

**Count I - Breach of Contract**

29. Plaintiff realleges the allegations of paragraphs 1-28 above as though fully set forth herein.

30. On or about September 2, 2004, Trudeau and the Government entered into the Agreement, which is a valid and binding contract.

31. Trudeau has duly performed all the terms and conditions of the Agreement required on his part.

32. The Agreement contains no admission of wrongdoing or liability by Trudeau. In fact, the Agreement expressly states that "[t]here have been no findings or admissions of wrongdoing or liability by the Defendants or Relief defendants other than the finding against Kevin Trudeau for contempt of Part I of the Stipulated Preliminary Injunction, entered by the Court on June 29, 2004."

33. The Government breached the Agreement, as construed by the implied covenant of good faith and fair dealing, by issuing statements to the effect that the Agreement is an admission of liability by Trudeau.

34. The statements by the Government, through its FTC staff, defeated an essential, bargained-for provision of the Agreement.

35. The Government clearly understood the bargained-for exchange of the settlement agreement, as exemplified in its Press Release which indicates in a note at the bottom

that the stipulated final order "does not constitute an admission by defendants," despite its overarching suggestion to the contrary in the very same press release. Moreover, the Government clearly understood that its note at the bottom of its Press Release was totally insufficient to prevent its Press Release from being deceptive. See e.g., FTC Publication *Dot Com Disclosures -- Information About Online Advertising* ("If a disclosure provides information that contradicts a claim, the disclosure will not be sufficient to prevent the ad from being deceptive.").

36. Each statement by the Government representing the Agreement as an admission of liability by Trudeau, including each publication of the Press Release on the FTC website, constitutes a separate and discrete breach of the Agreement.

37. The Government's breaches of the Agreement have proximately caused, and will continue to cause, Trudeau to suffer money damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Trudeau respectfully requests that the court enter judgment in his favor and against Defendant:

(a) entering judgment in favor of Trudeau and against the Government in an amount of damages to be proven at trial;

(b) awarding Trudeau his costs and attorneys fees incurred in bringing this action; and

(c) awarding Trudeau such other relief as the court deems just and proper.

Respectfully submitted,
Kevin Trudeau

By one of his attorneys

February 28, 2005

Eric L. Hirschhorn (member of the bar)
Winston & Strawn LLP
1400 L Street, NW
Washington, D.C. 20005

Kimball R. Anderson*
Stephen P. Durchslag*
Ronald Rothstein*
Lisa K. Seilheimer (member of the bar)
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601

David J. Bradford*
Daniel J. Hurtado*
Jenner & Block LLP
One IBM Plaza
Chicago, Illinois 60601

*application to the Federal Court of Claims bar pending