JENNER&BLOCK

February 16, 2005

Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603
Tel 312 222-9350
www.jenner.com

Chicago
Dallas
Washington, DC

**VIA FACSIMILE TO (202) 326-3259**

David J. Bradford
Tel 312 923-2975
Fax 312 840-7375
dbradford2@jenner.com

Heather Hippsley, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Drop NJ-3212
Washington, D.C. 20580

Dear Heather:

Please consider this letter a formal request that the FTC withdraw the website posting and Press Release which refers to the Agreed Order in Federal Trade Commission v. Kevin Trudeau, *et al.*, Civ. Nos. 98-C-0168 and 03-C-3904. An essential bargained-for element of the Agreement was the express understanding and promise by the FTC that Kevin Trudeau, by settling the action and entering into the Agreement, was not admitting any fault, wrongdoing, or liability. The FTC promised and agreed in the Agreement that "[Trudeau] . . . expressly den[ies] any wrongdoing or liability for any matters alleged in the [FTC's] Complaint and the civil contempt action." The Government further promised and agreed that, with the exception of the collateral civil contempt action, "[t]here have been no findings or admissions of wrongdoing or liability by [Kevin Trudeau]."

The FTC nonetheless issued a Press Release on September 7, 2004. This Press Release, which remains prominently posted in the FTC's website, was false. It effectively deprived Mr. Trudeau of the bargained-for benefits of the Agreement. The FTC Press Release, falsely headlined, "Kevin Trudeau Banned From Infomercials," referred to Mr. Trudeau as a "habitual false advertiser" who had "misled American consumers for years." Specifically, the Press Release included the following statement:

> This ban is meant to shut down an infomercial empire that has misled American consumers for years," said Lydia Parnes, Acting Director of the FTC's Bureau of Consumer Protection. "Other habitual false advertisers should take a lesson; mend your ways or face serious consequences.

In truth, Mr. Trudeau is not "banned" from infomercials, has not ever been found to have misled American consumers, to have engaged in false advertising, either habitually or otherwise, or to have engaged in other practices claimed in the FTC's Press Release. Although the FTC alleged these things, the Court never found them and, in the end, settled its charges against Mr. Trudeau in favor of the Agreement which expressly provided that "[t]here have been no findings or admissions of wrongdoing or liability by [Kevin Trudeau]."

The FTC's Press Release does not withstand scrutiny under the FTC's own standards and rules for advertising. As explained in the FTC's Deception Policy Statement, an advertisement is deceptive if it contains a statement – or omits information – that is likely to mislead consumers acting reasonably under the circumstances and is "material" or important to a consumer's decision to buy or use the product. See FTC Policy Statement on Deception, appended to Cliffdale Associates, Inc., 103 F.T.C. at 174. A statement also may be deceptive if the publisher does not have a reasonable basis to support the claim. Advertising Substantiation Statement. See FTC Policy Statement on Advertising Substantiation, appended to Thompson Medical Co., 104 F.T.C. 648, 839 (1984), aff'd, 791 F.2d 189 (D.C. Cir. 1986), cert. denied, 479 U.S. 1086 (1987). Additionally, as you repeatedly asserted to Judge Gettleman, if the "net impression" is misleading, literal truth is no defense. Here, even if certain of the statements in the press release were literally true, the net impression is that Mr. Trudeau was found guilty of wrongdoing, and that the court found that he ran an empire that misled consumers for years, is a habitual false advertiser, was adjudicated to owe the FTC $2 million based on wrongful conduct, and is banned from all infomercials from life. All of these net impressions are false and misleading.

Apart from its false references to shutting down an "empire that has misled American consumers for years" and the false reference to "habitual false advertisers," the Release is misleading because it implies that there was a finding of wrongdoing against Mr. Trudeau. Significantly, the Release contains a disclaimer that notes that the Order is not to be deemed an "admission" of wrongdoing, but conspicuously omits the agreement that the Order is not a "finding" of wrongdoing. It then states that the Order, when signed by the Judge, has the force of law. This implies that, although Mr. Trudeau did not admit wrongdoing, the Court found wrongdoing. This false impression is reinforced by references to a $2 million monetary judgment against him, without disclosing that he agreed to pay these monies to support a consumer redress fund. Once again, while the statement is literally true, it creates a false net impression.

Were Mr. Trudeau to publish something that had a headline and text that was as misleading as this Press Release, the FTC would not hesitate to take legal action against him – without even the courtesy of affording him the opportunity to substantiate the statements. It would undoubtedly emphasize that disclaimers cannot necessarily undo misleading impressions that are created by headlines and other textual statements. In fact, as one court has remarked in a comparable context, a disclaimer's "practical value in minimizing the derogatory inferences upon the respondents' integrity was at best minimal, for many will read the charge who may never see the answer." FTC v. Cinderella Career & Finishing Schools, 404 F.2d 1308, 1315-16 (DCC 1968).

The FTC Press Release has been widely reported and is prominently available on the internet. The FTC Press Release is still posted on the FTC website at http://www.ftc.gov/opa/2004/09/trudeaucoral.htm.

A person searching the internet for information on Mr. Trudeau likely will find information relating to the FTC's contention that he is a "habitual false advertiser" and that he allegedly ran "an infomercial empire that has misled American consumers for years." In fact, the FTC Press Release is prominently available to anyone seeking information about Mr. Trudeau. A search of the name "Kevin Trudeau" on the popular search-engine "Google" returns as the second non-sponsored link the FTC Press Release with its characterization of Mr. Trudeau as a "false advertiser."

A Google search of the terms "Kevin Trudeau" with the words "false" and "advertise" which are key words in the FTC Press Release, returns over 800 links to various websites. Over 100 of those links include the word "habitual," a word that first appeared in articles and messages about Mr. Trudeau only after the FTC Press Release referred to him as an "habitual false advertiser."

Newspapers and other media across the country reported on the resolution of the FTC's case against Mr. Trudeau. Stories appeared on CNN, WTOP Radio and in the *New York Times*, *Los Angeles Times*, and the *Washington Post*, among others. And, several of these stories took words directly from the FTC Press Release to characterize Mr. Trudeau as an "habitual false advertiser."

The Associated Press ran a story about Mr. Trudeau on its newswire on September 7, 2004 in which it adopted the FTC's characterization of Mr. Trudeau as an "habitual false advertiser." The Associated Press story was picked up by numerous media outlets, many of which maintain archives that are available for viewing on the internet. For example, the *Pittsburgh Post-Gazette* ran the AP story on September 8, 2004. And, the story is still available on the *Post-Gazette* website at http://www.pittsburghpost-gazette.com/pg/04252/375413.stm.

The *Lexington* (KY) *Herald Leader* picked up the AP story about Mr. Trudeau on September 7, 2004 and a reader can still find the article, with the use of the term "habitual false advertiser" at http://www.kentucky.com/mld/ kentucky/9604510.htm.

Numerous other newspapers throughout the country ran the same AP story that characterized Mr. Trudeau as an "habitual false advertiser." Stories appeared in Ft. Wayne, Indiana (*Journal Gazette*, September 7, 2004); Monterey, California (*Monterey Herald*, September 7, 2004); State College, Pennsylvania (*Centre Daily Times*, September 7, 2004); Charlotte, North Carolina (*Charlotte Observer*, September 7, 2004); Wichita, Kansas (*Wichita Eagle*, September 7, 2004); Duluth, Minnesota (*Duluth News Tribune*, September 7, 2004); Tallahassee, Florida (*Tallahassee Democrat*, September 7, 2004) and Myrtle Beach, South Carolina (*Sun Herald*, September 7, 2004) among others. Copies of stories characterizing Mr. Trudeau as a "habitual false advertiser" remained viewable on the websites for each of the listed publications and many others.

JENNER&BLOCK

Even outlets that did not use the AP story last September, ran their own versions of stories about Mr. Trudeau after the FTC issued its Press Release. For example, PR Newswire posted a press release on its website that referred to the FTC's case against Mr. Trudeau (the "PR Newswire Release"). Like the AP story and others, the PR Newswire Release referenced language contained in the FTC Press Release. For example, in its headline the PR Newswire Release stated that "False health claims earn 'habitual false advertiser' Kevin Trudeau unprecedented FTC ban." The PR Newswire Release is still posted on the PRWeb website at http://www.prweb.com/releases/ 2004/9/prweb156557.ht.

At about the same time a website called "ConsumerAffairs.com" posted a story about Mr. Trudeau. Again, the ConsumerAffairs.com story referenced language contained in the FTC Press Release, including the following quotation:

> "This ban is meant to shut down an infomercial empire that has misled American consumers for years," said Lydia Parnes, Acting Director of the FTC's Bureau of Consumer Protection. "Other habitual false advertisers should take a lesson; mend your ways or face serious consequences."

The ConsumerAffairs.com story is still posted on the ConsumerAffairs.com website at http://www.consumeraffairs.com/printme.php?url= /news04/trudeau_informercials.html.

Under the circumstances, it is incumbent upon the FTC to: (a) remove the Press Release from its website immediately; (b) issue a corrective retraction; (c) post that retraction on its website and to disseminate the retraction to each of the various news agencies and other websites which have been misled by the FTC's original Release. We appreciate your response to this request by Monday, February 21. If a satisfactory response is not received by then, we will have no alternative but to seek other redress. Thank you for your prompt response.

Sincerely,

David J. Bradford

DJB:fms
cc: Mr. Kevin Trudeau
Daniel J. Hurtado, Esq.