No. 05-263C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

KEVIN TRUDEAU,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, D.C. 20530
Telephone: (202) 514-4325
Facsimile: (202) 514-7965

Attorneys for Defendant

OF COUNSEL:

WILLIAM BLUMENTHAL
General Counsel

JOHN F. DALY
Deputy General Counsel
For Litigation

LAWRENCE DeMILLE-WAGMAN
Attorney
Federal Trade Commission
Washington, D.C. 20850
Telephone: (202) 326-2448

April 28, 2005

TABLE OF CONTENTS

Page

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature of the Case . . . . . . . . . . . . . . . . . . . 2

II. Statutory and Regulatory Background . . . . . . . . . . 4

III. Statement of Facts . . . . . . . . . . . . . . . . . . . 5

A. The FTC's Enforcement Efforts Against Mr. Trudeau . . . . . . . . . . . . . . . . . . . 5

B. The 2004 Stipulated Order . . . . . . . . . . . . 7

C. The FTC Press Release . . . . . . . . . . . . . . 9

D. Mr. Trudeau's Complaints Regarding The Press Release . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I. This Court Lacks Jurisdiction To Entertain Mr. Trudeau's Complaint Pursuant To The Tucker Act . . . . . . . . . . . . . . . . . . . . . . 12

A. The Court Of Federal Claims Is a Court Of Limited Jurisdiction . . . . . . . . . . . . 12

B. The Court Lacks Jurisdiction Because Mr. Trudeau's Claim Is Founded Upon A Purported Contract Made By The United States In Its Sovereign Capacity . . . . . . . 14

1. Mr. Trudeau's Complaint Is Founded Upon A Purported Contract Executed By The United States In Its Sovereign Capacity . . . . 16

TABLE OF CONTENTS (Contd.)

Page

2. The Stipulated Order Does Not Contain An Authorized and Unmistakable Promise By The United States To Pay Money Damages For Breach . . . . . . . . . . . . 19

C. The Court Lacks Jurisdiction Because Mr. Trudeau's Claim Is Founded Upon An Alleged Contract Over Which A Federal District Court Has Retained Jurisdiction To Enforce . . . . . . . . . . . . . . . . . 20

II. Mr. Trudeau's Complaint Fails To State A Claim Upon Which Relief Can Be Granted . . . . . . . 22

A. Legal Standards Under RCFC 12(b)(6) . . . . . . 23

B. The Stipulated Order Did Not Impose Implied Duties Upon The FTC Regarding Publication of The Settlement . . . . . . . . . 24

C. No Reasonable View Of The Facts Alleged In The Complaint Can Support Mr. Trudeau's Claim . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

## CASES

Page(s)

Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys. Inc.,
988 F.2d 1157 (Fed. Cir. 1993) . . . . . . . . . . . . . . 24

Awad v. United States,
61 Fed. Cl. 281 (2004) . . . . . . . . . . . . . . 15, 20

Awad v. United States,
301 F.3d 1367 (Fed. Cir. 2002) . . . . . . . . . . . . . . 14

Bannum, Inc. v. United States,
33 Fed. Cl. 672 (1995) . . . . . . . . . . . . . . . . . . 2

Beraha v. Baxter Health Care Corp.,
956 F.2d 1436 (7th Cir. 1992) . . . . . . . . . . . . . . 26

Bloomington Hosp. v. United States,
29 Fed. Cl. 286 (1993) . . . . . . . . . . . . . . . . . 21

Bowen v. City of New York,
476 U.S. 467 (1986) . . . . . . . . . . . . . . . . . . 12

Bradley v. Chiron Corp.,
136 F.3d 1317 (Fed. Cir. 1999) . . . . . . . . . . . . . . 25

Brown v. Moore,
973 P.2d 950, 954 (Utah 1998) . . . . . . . . . . . . . . 26

C.B.C. Enterprises, Inc. v. United States,
24 Cl. Ct. 1, 5 (1991) . . . . . . . . . . . . . . . . . . 25

Commonwealth of Kentucky, Natural Res. and Envtl. Protection Cabinet v. United States,
27 Fed. Cl. 173 (1992) . . . . . . . . . . . . . . . . . 15

Comprehensive Care Corp. v. RehabCare Corp.,
98 F.3d 1063 (8th Cir. 1996) . . . . . . . . . . . . 24, 25

Conservancy Dist. v. Carbon Water Conservancy Dist.
226 F.3d 1170 (10th Cir. 2000) . . . . . . . . . . . . . . 26

TABLE OF AUTHORITIES (Contd.)

CASES

Page(s)

Cosmic Construction Co. v. United States,
697 F.2d 1389 (Fed. Cir. 1982) . . . . . . . . . . . . . . . 12

C.B.C. Enterprises, Inc. v. United States,
24 Cl. Ct. 1 (1991) . . . . . . . . . . . . . . . . . . . . 25

Cygnus Telecomm. Technology v. Totalaxcess.com,
345 F.3d 1372 (Fed. Cir. 2003) . . . . . . . . . . . . . . 22

Dehne v. United States,
970 F.2d 890 (Fed. Cir. 1992) . . . . . . . . . . . . . . . 13

Doe v. United States,
37 Fed. Cl. 74 (1996) . . . . . . . . . . . . . . . . . . . 15

Drakes v. United States,
28 Fed. Cl. 190 (1993) . . . . . . . . . . . . . . . . . . 15

Dreisbach v. Murphy,
658 F.2d 720 (9th Cir. 1981) . . . . . . . . . . . . . . . 17

Fausto v. United States,
16 Cl. Ct. 750 (1989) . . . . . . . . . . . . . . . . . . . 21

FTC v. Cinderella Career & Finishing Schools, Inc.,
404 F.2d 1308 (D.C. Cir. 1968) . . . . . . . . . . . . . . . 16

FTC v. Gem Merchandising Corp.,
87 F.3d 466 (11th. Cir. 1996) . . . . . . . . . . . . . . . . 5

FTC v. Klesner,
280 U.S. 19 (1929) . . . . . . . . . . . . . . . . . . . . 16

FTC v. Trudeau, et al.,
No. 03-3904 (N.D. Ill.) (Filed June 9, 2003) . . . . . . . . 6

FTC v. Trudeau,
No. 98-0168 (N.D. Ill.) (Filed Jan. 12, 1998) . . . . . . . 6

Fiorentino v. United States,
607 F.2d 963, 221 Ct. 545 (1979),
cert. denied, 444 U.S. 1083(1980) . . . . . . . . 19, 20, 21

TABLE OF AUTHORITIES (Contd.)

CASES


Page(s)

Good v. United States,
23 Cl. Ct. 744 (1991) . . . . . . . . . . . . . . . . . . 21

Griswold v. United States,
61 Fed. Cl. 458 (2004) . . . . . . . . . . . . . . . . . 21

Grundy v. United States,
2 Cl. Ct. 596, 598 (1983) . . . . . . . . . . . . . . . . 15

Henke v. United States,
60 F.3d 795 (Fed. Cir. 1995) . . . . . . . . . . . . . . . 2

Holloway v. Bristol-Myers Corp.,
485 F.2d 986 (D.C. Cir. 1973) . . . . . . . . . . . . 16, 17

Kania v. United States,
227 Ct. C 650 F.2d 264,
cert. denied, 454 U.S. 895 (1981) . . . . . . . . . . passim

Kokkonen v. Guardian Life Insurance Company of America,
511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . 22

Lee v. United States,
33 Fed. Cl. 374 (1995) . . . . . . . . . . . . . . . . . . 21

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . 12

Massie v. United States,
166 F.3d 1184 (Fed. Cir. 1999) . . . . . . . . . . . . . 21

Mitchell v. United States,
44 Fed. Cl. 437 (1999) . . . . . . . . . . . . . . . . . 21

Moore v. United States,
48 Fed. Cl. 394 (2000) . . . . . . . . . . . . . . . . . 15

Naylor v. Case and McGrath, Inc.,
585 F.2d 557 (2d Cir. 1978) . . . . . . . . . . . . . . . 17

New York Life Ins. Co. v. United States,
190 F.3d 1372 (Fed. Cir. 1999) . . . . . . . . . . . . . 23

TABLE OF AUTHORITIES (Contd.)

CASES

Page(s)

P.R. Burke Corp. v. United States,
277 F.3d 1346 (Fed. Cir. 2002) . . . . . . . . . . . . . . 24

Perez v. United States,
156 F.3d 1366 (Fed. Cir. 1998) . . . . . . . . . . . . . . . 23

Pines Residential Treatment Center, Inc. v. United States,
2005 WL 428479, _ Fed. Cl. _ (Feb. 24. 2005) . . . . . . . 21

Reed by and Through Reed v. United States,
891 F.2d 878 (11th Cir. 1990) . . . . . . . . . . . . . . . 21

Rocovich v. United States,
933 F.2d 991 (Fed. Cir. 1991) . . . . . . . . . . . . . . . 14

Sadeghi v. United States,
46 Fed. Cl. 660 (2000) . . . . . . . . . . . . . . . . . . 15

Sanders v. United States, ,
252 F.3d 1329 (Fed. Cir. 2001) . . . . . . . . . . . . 14, 19

Sanpete Water Conservancy Dist. v. Carbon Water Conserv. Dist.,
226 F.3d 1170 (10th Cir. 2000) . . . . . . . . . . . . . . 25

Schmidt v. Lessard,
414 U.S. 473 (1974) . . . . . . . . . . . . . . . . . . . . 27

Silva v. United States,
51 Fed. Cl. 374 (2002) . . . . . . . . . . . . . . . . . . 15

Southfork Sys., Inc. v. United States,
141 F.3d 1124 (Fed. Cir. 1998) . . . . . . . . . . . . . . 23

State of Alaska v. United States,
35 Fed. Cl. 685 (1996),
aff'd, 119 F.3d 16 (Fed. Cir. 1997) (Table) . . . . . . . 25

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . 13

TABLE OF AUTHORITIES (Contd.)

CASES

Page(s)

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . 12

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . 12, 13

United States v. Winstar Corp.,
518 U.S. 839 (1996) . . . . . . . . . . . . . . . . . . 19

STATUTES

5 U.S.C. 701, et seq . . . . . . . . . . . . . . . . . . . . 11

15 U.S.C. §§ 41-58 . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 45(a)(1), (2) . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 52(b) . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. §§ 53(b), 56(a) . . . . . . . . . . . . . . . . . . 5

15 U.S.C. §§ 53(b), 56(a) . . . . . . . . . . . . . . . . . . 22

15 U.S.C. §§ 53(b), 56(a), . . . . . . . . . . . . . . . . . 20

15 U.S.C. § 54 . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 55 . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1491(a)(1) . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . 12

RCFC 12(b)(1) & 12(b) (6) . . . . . . . . . . . . . . . . . . . 1

RCFC 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . 12

RCFC 12(6) . . . . . . . . . . . . . . . . . . . . . . . 22

Rule 65(d) . . . . . . . . . . . . . . . . . . . . . . . 27

TABLE OF AUTHORITIES (Contd.)

CASES

Page(s)

MISCELLANEOUS

11A C. Wright, A. Miller, & M. Kane, _Federal Practice and Procedure_, § 2955 (2d 1995). . . . . 27

Restatement (Second) of Contracts § 205 (1979) . . . . . . . . 24

Federal Rule of Civil Procedure 65(d) . . . . . . . . . . . . . 27

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KEVIN TRUDEAU,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 05-263C<br>(Judge George W. Miller) |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests the Court to dismiss the complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. In support of this motion, we rely upon the complaint and the following brief.

DEFENDANT'S BRIEF

QUESTIONS PRESENTED

1. Whether this Court lacks subject matter jurisdiction to entertain plaintiff's complaint because it is founded upon an alleged contract made by the United States in its sovereign capacity.

2. Whether this Court lacks subject matter jurisdiction to entertain plaintiff's complaint because it is founded upon an alleged contract over which a Federal district court has retained jurisdiction to interpret, enforce, and modify.

3. Whether plaintiff's complaint fails to state a claim upon which relief can be granted because the district court's stipulated order did not impose implied duties upon the United States and, to the extent it did, no reasonable view of the facts alleged in the complaint can support a breach of the implied covenant of good faith and fair dealing.

## STATEMENT OF THE CASE[1]

### I. Nature of the Case

The case involves a dispute over the wording of a press release. The Federal Trade Commission ("FTC") issued the press release to announce the settlement of a civil enforcement action brought by the FTC against plaintiff Kevin Trudeau for false advertising in violation of the Federal Trade Commission Act.

At the time suit was filed, Mr. Trudeau was in the business of selling various self-help and health-related products, principally through radio and television "infomercials". In particular, Mr. Trudeau promoted a dietary supplement named Coral Calcium Supreme, which he advertised would cure cancer, among other diseases. The FTC alleged that this product did not provide the advertised benefits. The FTC's suit ended these unsubstantiated practices through a stipulated final order

[1] Our Statement of the Case is based upon the factual allegations contained in the complaint. Although we do not concur with the entirety of these allegations, they are treated as true for purposes of our motion to dismiss. See, e.g., Henke v. United States, 60 F.3d 795, 796 (Fed. Cir. 1995); Bannum, Inc. v. United States, 33 Fed. Cl. 672, 674-75 (1995).

entered by the district court, which essentially gave the FTC all the injunctive relief it had sought, including a broad prohibition of the type of infomercial that had led to the enforcement action.

In his complaint, Mr. Trudeau characterizes the district court's order as a "contract" within this Court's Tucker Act jurisdiction, and alleges that the FTC's press release "breached" the contract because it announced that the settlement constituted an admission of wrongdoing by Mr. Trudeau. Mr. Trudeau seeks an unspecified amount of money damages for business injuries resulting from the alleged breach of the order/contract.

For reasons explained below, Mr. Trudeau's attempt to invoke the jurisdiction of this Court should be rejected. The Court lacks jurisdiction because the district court has expressly retained jurisdiction to enforce the stipulated order upon which Mr. Trudeau bases his claim. Whatever remedies Mr. Trudeau may possess for the FTC's alleged violation of the stipulated order must be pursued, if at all, in the court that entered and retained jurisdiction to enforce the stipulated order.

Additionally, the stipulated order, if contractual at all, was entered into by the United States in its sovereign capacity and, thus, falls outside this Court's limited Tucker Act jurisdiction. The FTC's purpose when it initiated, litigated, and later settled the Coral Calcium suit was to protect the

public against deception by ensuring, through the remedies afforded by the Federal Trade Commission Act, that advertising conveys truthful information to the public.

In any event, the complaint fails to state a claim upon which relief can be granted. The complaint does not allege that the FTC breached an express provision of any contract. Rather, as his sole basis for relief, Mr. Trudeau alleges the FTC breached the "implied covenant of good faith and fair dealing" by announcing that the settlement was an admission of liability on his part. Contrary to Mr. Trudeau's claim, however, the district court's stipulated order did not impose implied duties upon the FTC and, to the extent it did, no reasonable view of the facts alleged in the complaint can establish that the FTC's press release announced the settlement as an admission of liability. In fact, the press release stated precisely the opposite.

## II. Statutory and Regulatory Background

The FTC is an independent agency of the United States created by the Federal Trade Commission Act ("FTC Act" or "Act"), 15 U.S.C. §§ 41-58. Among other responsibilities, the FTC enforces sections 5 and 12 of the FTC Act. Section 5(a) declares unlawful "unfair or deceptive acts or practices in or affecting commerce" and empowers the Commission to prevent such acts or practices. 15 U.S.C. § 45(a)(1), (2). Section 12 prohibits the dissemination of "any false advertisement" in order to induce the

purchase of "food, drugs, devices, or cosmetics." 15 U.S.C. § 52(a)(2). The Act defines "false advertisement" as "an advertisement, other than labeling, which is misleading in a material respect." 15 U.S.C. § 55.

A false advertisement under section 12 constitutes an unfair or deceptive act or practice within the meaning of section 5. 15 U.S.C. § 52(b). False advertising is also made a criminal offense if committed in connection with the sale of injurious products or "with intent to defraud or mislead," and is punishable by a fine of not more than $5,000 and imprisonment for not more than six months. 15 U.S.C. § 54.

The Act authorizes the FTC, through its own attorneys and/or the Attorney General, to initiate civil actions in Federal district court to enjoin violations of the FTC Act. See 15 U.S.C. §§ 53(b), 56(a). In such cases, the district court's authority to issue injunctive relief carries with it the full range of equitable remedies, including consumer redress and disgorgement of profits. See FTC v. Gem Merchandising Corp., 87 F.3d 466, 468-70 (11th. Cir. 1996).

## III. Statement of Facts

### A. The FTC's Enforcement Efforts Against Mr. Trudeau

For several years, the FTC sought relief against Mr. Trudeau, alleging that his infomercials misled consumers about bogus cures for serious diseases, such as cancer and multiple

sclerosis, and conditions such as hair loss and obesity. The 2004 Stipulated Order resolved two cases that the FTC had filed against Mr. Trudeau dating back to 1998.

Specifically, in 1998, and again in 2003, the FTC filed charges against Mr. Trudeau and other defendants in the United States District Court for the Northern District of Illinois, alleging that the marketing of various specified products violated Sections 5 and 12 of the FTC Act. Compl. ¶ 7; FTC v. Trudeau, No. 98-0168 (N.D. Ill.) (Filed Jan. 12, 1998); FTC v. Trudeau, et al., No. 03-3904 (N.D. Ill.) (Filed June 9, 2003). In the 2003 suit, the FTC alleged that Mr. Trudeau violated the FTC Act by falsely claiming that one product, a dietary supplement named Coral Calcium Supreme, could cure cancer, multiple sclerosis, lupus, heart disease, high blood pressure, and other diseases. Compl., Exh. "B".[2]

In connection with both actions, which had been consolidated, the FTC sought injunctive relief and redress for consumers. The FTC also sought preliminary relief and, in July 2003, the court entered a stipulated preliminary injunction that prohibited Mr. Trudeau from making any of the claims for Coral

---

[2] The FTC's 2003 complaint and related documents are available at http://www.ftc.gov/os/caselist/0323064.htm. The 1998 suit, which was settled upon its commencement, covered the marketing of various other products, including "Eden's Secret Nature's Purifying Product," "Sable Hair Farming System," "Dr. Callahan's Addiction Breaking System," and "Howard Berg's Mega Reading." See http://www.ftc.gov/opa/1998/01/megasyst.htm.

Calcium Supreme that the FTC challenged. Compl., Exh. "A" at 2; Exh. "B" at 1.

Despite the preliminary injunction, Mr. Trudeau did not stop making the challenged claims with respect to Coral Calcium Supreme and, on June 29, 2004, the district court, the Honorable Robert W. Gettleman, found Mr. Trudeau in civil contempt for violating the preliminary injunction by continuing to advertise that Coral Calcium Supreme was an effective cure for cancer. Compl., Exh. "A" at 2; Exh. "B" at 1.

B. The 2004 Stipulated Order

Two months later, on the heels of Judge Gettleman's contempt order, the parties agreed to a settlement. Compl. ¶ 8. The settlement was embodied in a stipulated order entered by the court on September 2, 2004 (the "Stipulated Order"). Compl., Exh. "A". The Stipulated Order resolved (1) the FTC's attempt to have Mr. Trudeau held in contempt of the 1998 Order; (2) the FTC's request for additional remedial measures in connection with Mr. Trudeau's contempt of the preliminary injunction; and (3) the FTC's 2003 complaint. Compl., Exh. "A" at 2.

In the Stipulated Order, Mr. Trudeau agreed to a permanent injunction that essentially gave the FTC all the equitable relief it had sought, including a broad prohibition of the type of infomercial that had led to the lawsuits. Id. at 7-10. Among other things, the Stipulated Order banned Mr. Trudeau "from

producing, disseminating, making or assisting others in making any representation in an infomercial aired or played on any television or radio media. . . ." Compl., Exh. "A" at 8. The Order did contain a limited exception to the ban, allowing Mr. Trudeau to make representations on radio or television in connection with the marketing of any book, newsletter, or other informational publication so long as that book, newsletter, or publication does not refer to any product Mr. Trudeau is marketing, is not an ad for any product or service, and is not sold in conjunction with a product or service that is related to the content of the book. Id.

The Stipulated Order also prohibited Mr. Trudeau "from manufacturing, labeling, advertising, promoting, offering for sale, sale, or distribution of any product containing coral calcium . . . ," or from making any representation regarding benefits, performance, or efficacy of any product, program or service unless such representation is true and not misleading. Id. at 10-11. Finally, the 2004 Stipulated Order made Mr. Trudeau liable for equitable monetary relief in the amount of $2 million. Id. at 16.

Significantly for purposes of this case, the Stipulated Order did not address the wording of a press release, contain a confidentiality clause, or otherwise limit the FTC's right to publicize the settlement in any manner. Moreover, the Stipulated

Order also provided that the district court retained jurisdiction to interpret, enforce, and modify the order:

**RETENTION OF JURISDICTION**

**XXI.**

> **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Order.

Compl., Exh. A at 29.

C. The FTC Press Release

On September 7, 2004, the FTC issued a routine press release announcing the settlement, which was posted on the agency's internet website. Compl. ¶ 10 & , Exh. "B". The release is headed "Kevin Trudeau Banned from Infomercials," with a subheading "Trudeau Settles Claims in Connection with Coral Calcium Supreme and Biotape." Id., Exh. "B" at 1. The first paragraph explains that, pursuant to the settlement, Mr. Trudeau is broadly banned from infomercials that involve any type of product, service, or program, but not from truthful infomercials for informational publications. Id. It also mentions that he "agreed" to pay $2,000,000 to "settle" the charges the FTC had brought. Id. The next paragraph explains the terms of the monetary judgment. Id. The third paragraph quotes from a statement made by an FTC employee, Lydia Parnes, on the meaning of the 2004 Order to the FTC: "This ban is meant to shut down an infomercial empire that has misled American consumers for years."

Id. Ms. Parnes also referred to the cautionary effect she hoped the 2004 Order would have: "Other habitual false advertisers should take a lesson; mend your ways or face serious consequences." Id.

The fourth paragraph detailed what the FTC "alleged," and was followed by a paragraph describing what the court "found" regarding Mr. Trudeau's contempt of the 2003 preliminary injunction. Id. The sixth and seventh paragraphs provided additional detail regarding the terms of "the settlement announced today." Id. Finally, the press release closed with the following statement:

> NOTE: This stipulated final order is for settlement purposes only and does not constitute an admission by the defendants of a law violation. A stipulated final order has the force of law when signed by the judge.

Id. at 2.

D. Mr. Trudeau's Complaints Regarding The Press Release

Approximately five months after its issuance, Mr. Trudeau asked the FTC to withdraw the press release. Compl. ¶ 27 & Exh. "C". Mr. Trudeau did not like the press release because, in his view, it indicated that the district court had found him liable for wrongdoing, when in fact the Stipulated Order indicated that there had been no findings or admissions of liability by Mr. Trudeau. Id. As noted above, however, the press release clearly

stated that the Stipulated Order "is for settlement purposes only and does not constitute an admission by the defendants of a law violation." Nevertheless, Mr. Trudeau believed the press release somehow violated the Stipulated Order. The FTC denied Mr. Trudeau's request by letter dated February 22, 2005, citing the clear wording of the press release. Compl. ¶ 28 & Exh. "D".

Mr. Trudeau now seeks judicial relief. He does not press his claim, however, in the court that entered and retained jurisdiction to enforce the Stipulated Order. Instead, on February 28, 2005, Mr. Trudeau filed his complaint in this Court, as well as a complaint in the United States District Court for the District of Columbia pursuant to the Administrative Procedure Act, 5 U.S.C. 701, et seq. ("APA").

In his APA suit, Mr. Trudeau seeks declaratory and injunctive relief - namely, the rewording of the press release. In this case, Mr. Trudeau characterizes Judge Gettleman's order as a "contract" within this Court's Tucker Act jurisdiction, alleges that the FTC's press release "breached" the order/contract, and seeks an unspecified amount of money damages for injuries to his business resulting from the alleged breach.

For reasons explained below, Mr. Trudeau's attempt to invoke the jurisdiction of this Court should be rejected. Should the Court conclude that it possesses jurisdiction, the complaint should nevertheless be dismissed pursuant to RCFC 12(b)(6)

because Mr. Trudeau has failed to state a claim upon which relief can be granted.

## ARGUMENT

### I. This Court Lacks Jurisdiction To Entertain Mr. Trudeau's Complaint Pursuant To The Tucker Act

#### A. The Court Of Federal Claims Is a Court Of Limited Jurisdiction

It is axiomatic, but bears repeating, that this Court is a court of limited jurisdiction, and its ability to entertain a suit is circumscribed by the extent to which the United States has waived sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). Waiver of sovereign immunity and, thus, consent to be sued, must be expressed unequivocally — it cannot be implied. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); Testan, 424 U.S. at 399. Thus, any grant of jurisdiction to the Court of Federal Claims must be strictly construed. Bowen v. City of New York, 476 U.S. 467, 479 (1986); Cosmic Construction Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397. Pursuant to this statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or

for liquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

This provision, however, does not create any substantive right of recovery against the United States for money damages. Testan, 424 U.S. at 398. Rather, it merely confers jurisdiction upon the Court whenever a substantive right exists. Id. A claimant, therefore, must look beyond this jurisdictional statute and establish a substantive right that entitles him to recover money damages against the United States. United States v. Mitchell, 463 U.S. 206, 216 (1983). It is essential that this substantive right "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." Dehne v. United States, 970 F.2d 890, 893 (Fed. Cir. 1992) (quoting Mitchell, 463 U.S. at 216-17 (citations omitted)).

Here, Mr. Trudeau bases this Court's jurisdiction upon an alleged express contract with the United States. Specifically, Mr. Trudeau alleges that a contract was formed "by Kevin Trudeau and the United States Government on September 2, 2004 when they signed a written stipulation [hereinafter the "Agreement"] settling all claims" in the Coral Calcium suit. Compl. ¶ 1. According to the complaint, the "agreement" in question is Judge Gettleman's September 2004 Stipulated Order. Compl. ¶ 8, Exh. A.

As plaintiff, Mr. Trudeau bears the burden of establishing that the United States has unequivocally waived sovereign immunity from suit in this Court. See, e.g., Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). As explained below, he has not met this burden for two reasons.

B. The Court Lacks Jurisdiction Because Mr. Trudeau's Claim Is Founded Upon A Purported Contract Made By The United States In Its Sovereign Capacity

As a threshold matter, assuming for argument's sake that Judge Gettleman's Stipulated Order constitutes an express contract, the Court lacks jurisdiction to entertain Mr. Trudeau's complaint because the Government entered into the contract in its sovereign capacity, and did not unmistakably agree to pay money damages for any breach.

It has long been recognized that "[t]he contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds." Kania v. United States, 227 Ct. Cl. 458, 650 F.2d 264, cert. denied, 454 U.S. 895 (1981). Thus, not all agreements that can be fairly characterized as an express or implied contract with the United States are sufficient to invoke this Court's Tucker Act jurisdiction. See Awad v. United States, 301 F.3d 1367, 1375 (Fed. Cir. 2002); Sanders v. United States,

252 F.3d 1329, 1334 (Fed. Cir. 2001).[3]

Rather, whether Congress has waived sovereign immunity for a claim founded upon a contract "depends on the type of contract the government makes." Awad v. United States, 61 Fed. Cl. 281, 284 (2004) (citing Kania, 650 F.2d at 268). As this Court recently explained:

> The two main categories of contracts that the government makes are often referred to as proprietary and sovereign. The United States generally has waived sovereign immunity with regard to proprietary contracts, which are contracts in which "the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." In contrast, the government has not waived sovereign immunity for contracts that it makes in its sovereign, or governmental, capacity. As a result, this Court has jurisdiction over most proprietary contracts, but generally does not have jurisdiction over contracts the government makes in its sovereign capacity.

Awad, 61 Fed. Cl. at 284 (quoting Kania, 650 F.2d at 268) (citations omitted).

---

[3] Accord Silva v. United States, 51 Fed. Cl. 374, 377 (2002); Moore v. United States, 48 Fed. Cl. 394, 397 (2000); Sadeghi v. United States, 46 Fed. Cl. 660 (2000); Doe v. United States, 37 Fed. Cl. 74, 77 (1996); Drakes v. United States, 28 Fed. Cl. 190 (1993); Commonwealth of Kentucky, Natural Res. and Envtl. Protection Cabinet v. United States, 27 Fed. Cl. 173, 179 (1992); Grundy v. United States, 2 Cl. Ct. 596, 598 (1983).

1. Mr. Trudeau's Complaint Is Founded Upon A Purported Contract Executed By The United States In Its Sovereign Capacity

Under these authorities, it is apparent that the FTC entered into the contract alleged in the complaint solely in its sovereign capacity.

The FTC engages in law enforcement activities, such as enforcing the Nation's consumer protection laws, to prevent unfair or deceptive acts or practices in commerce. The sine qua non for this activity is protection of the public. See FTC v. Klesner, 280 U.S. 19, 27 (1929) ("to justify the Commission in filing a complaint under section 5, the purpose must be protection of the public"); FTC v. Cinderella Career & Finishing Schools, Inc., 404 F.2d 1308, 1313 (D.C. Cir. 1968) ("the basic purpose of the Act is the protection of the public"); Holloway v. Bristol-Myers Corp., 485 F.2d 986, 991 n.18 (D.C. Cir. 1973) ("[T]he Commission's role as both guardian and spokesman of the public interest has unquestioned vitality.") (citations omitted).

To discharge its responsibilities, Congress vested the FTC with broad discretionary powers that are akin to prosecutorial functions. See Klesner, 280 U.S. at 27 (FTC exercises "functions of both prosecutor and judge"); Holloway, 485 F.2d at 991-98 ("The Commission was entrusted with a broad responsibility and discretion, prosecutorial in part, judicial in part . . . .").

As explained by the court of appeals in Holloway:

> The Act gives the Commission a broad range of flexible enforcement powers available for use, as deemed necessary in the FTC's sound discretion and expert judgment. Inherent in the exercise of this discretion is the interplay of numerous factors: the relative seriousness of the departure from accepted trade practices, its probable effect on the public welfare, the disruption to settled commercial relationships that enforcement proceedings would entail, whether action is to be taken against a single party or on an industry-wide basis, the form such action should take, the most appropriate remedy, the precedential value of the rule of law sought to be established, and a host of other considerations. Above all, there is need to weigh each action against the Commission's broad range policy goals and to determine its place in the overall enforcement program of the FTC.

Holloway, 485 F.2d at 997 (citations omitted). Because such functions are uniquely Governmental in character, Congress focused upon the FTC as an "exclusive enforcement authority" for violations of section 5. Id., 485 F.2d at 998.[4]

In this light, Mr. Trudeau's claim – if contractual at all – is unquestionably founded upon a purported contract made by the United States in its sovereign capacity. The "contract" upon which Mr. Trudeau relies was allegedly created when the FTC agreed to settle the Coral Calcium suit. The FTC, of course, initiated that action to prevent deceptive acts or practices and

---

[4] For this reason, courts have uniformly held that there is no implied private right of action under the FTC Act. See, e.g., Dreisbach v. Murphy, 658 F.2d 720 (9th Cir. 1981); Naylor v. Case and McGrath, Inc., 585 F.2d 557, 561 (2d Cir. 1978).

false advertising in violation of sections 5 and 12 of the Act. The FTC's purpose when it initiated, litigated, and later settled, the Coral Calcium action was clear: to protect the public against deception by ensuring, through the remedies afforded by the FTC Act, that advertising conveys truthful information to the public.

By agreeing to the Stipulated Order, the FTC vindicated this public interest. In so doing, it plainly did not "step[] off the throne and engage[] in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." Kania, 650 F.2d at 268. The FTC received nothing in exchange for its agreement to settle, other than the assurance that it had enforced the law that Congress entrusted to it, and had secured the remedies that Congress deemed sufficient to protect the public against the dangers of false advertising. Indeed, the Stipulated Order essentially gave the FTC all the injunctive relief it had sought, including a broad prohibition of the type of infomercial that had led to the lawsuits. The FTC's efforts to obtain this relief, in and for the public interest, were inherently sovereign in nature.

2. The Stipulated Order Does Not Contain An Authorized and Unmistakable Promise By The United States To Pay Money Damages For Breach

In Kania, the Court of Claims held that a claim for money damages for the alleged breach of a sovereign contract may not be maintained in this Court unless there was "specific authority . . . to make the agreement obligating the United States to pay money, and [the agreement] spell[s] out how in such a case the liability of the United States is to be determined." Kania, 650 F.2d at 264. This showing requires "the same kind of express language (in both written and oral agreements) required by the unmistakability doctrine concerning government liability for the exercise of sovereign power." Sanders, 252 F.3d at 1334 (citing United States v. Winstar Corp., 518 U.S. 839, 878-80 (1996)).

In this case, the purported contract between Mr. Trudeau and the United States does not "clearly and unmistakably" provide that the United States is liable for monetary damages in the event of breach. Instead, the "contract" is a judicial decree that restrains and enjoins Mr. Trudeau from engaging in certain business activities and practices. Indeed, other than the requirement to drop its claims, the Stipulation Order places no affirmative obligations upon the FTC at all, much less an express obligation to pay damages for breach.

Consequently, this case does not meet the limited exception to the general rule regarding the Court's lack of jurisdiction

over claims based upon contracts executed by the United States in its sovereign capacity. See Kania, 650 F.2d at 264; Awad, 61 Fed. Cl. at 285. The complaint should thus be dismissed.

C. The Court Lacks Jurisdiction Because Mr. Trudeau's Claim Is Founded Upon An Alleged Contract Over Which A Federal District Court Has Retained Jurisdiction To Enforce

Should the Court conclude that Kania does not preclude the Court from exercising Tucker Act jurisdiction over Mr. Trudeau's suit, jurisdiction does not extend to Mr. Trudeau's complaint for a second salient reason: Mr. Trudeau's claim is founded upon a purported contract over which a Federal district court has retained jurisdiction to enforce.

Assuming for argument's sake that Judge Gettleman's Stipulated Order constitutes a contract, it has nevertheless been recognized that a "contract will not fall within the purview of the Tucker Act if Congress has placed jurisdiction over it elsewhere." Massie v. United States, 166 F.3d 1184, 1188 (Fed. Cir. 1999). See also Bloomington Hosp. v. United States, 29 Fed. Cl. 286, 292-93 (1993) (quoting Fiorentino v. United States, 607 F.2d 963, 221 Ct. Cl. 545, 555 (1979), cert. denied, 444 U.S. 1083 (1980)) ("The instances of partial repeal of the Tucker Act by laws expressly directing litigation of some class or kind elsewhere are common.").

A corollary to this principle is that this Court lacks jurisdiction to entertain claims founded upon a settlement

agreement arising from litigation committed to another forum, where that forum's jurisdiction "'includes the power to enforce a settlement resulting from the claim that provided the basis for jurisdiction.'" Massie, 166 F.3d at 1188 (quoting Reed by and Through Reed v. United States, 891 F.2d 878, 880 (11th Cir. 1990)) (Court of Federal Claims lacks jurisdiction over an agreement settling claims under the Federal Torts Claims Act)).[5]

That is the case here. The Stipulated Order arose out of a civil enforcement action brought by the FTC against Mr. Trudeau to enjoin alleged violations of the FTC Act. As noted above, the FTC Act vests the Federal district courts, not this Court, with jurisdiction to entertain such actions. 15 U.S.C. §§ 53(b), 56(a). Moreover, the terms of the parties' alleged settlement agreement are embodied in the Stipulated Order, Compl. ¶ 8 & Exh. "A", and Judge Gettleman has expressly retained jurisdiction to enforce the order. Compl., Exh. A at 29. In these circumstances, the district court retained jurisdiction to enforce the Stipulated Order. See Cygnus Telecomm. Technology v. Totalaxcess.com, 345 F.3d 1372, 1374-75 (Fed. Cir. 2003) (citing

---

[5] Similarly, this Court has consistently held that it lacks jurisdiction to entertain breach of settlement agreement claims where the agreement resulted from litigation committed to another forum. See Pines Residential Treatment Center, Inc. v. United States, 2005 WL 428479, _ Fed. Cl. _ (Feb. 24. 2005); Griswold v. United States, 61 Fed. Cl. 458, 465 (2004); Mitchell v. United States, 44 Fed. Cl. 437, 439 (1999); Lee v. United States, 33 Fed. Cl. 374, 380 (1995); Good v. United States, 23 Cl. Ct. 744 (1991); Fausto v. United States, 16 Cl. Ct. 750, 753 (1989).

Kokkonen v. Guardian Life Insurance Company of America, 511 U.S. 375, 378- 81 (1994)) (district court has jurisdiction to enforce settlement agreement where court's consent judgment incorporates settlement terms or includes a provision "retaining jurisdiction" over the matter).

Accordingly, whatever remedies Mr. Trudeau may possess for the FTC's alleged violation of the Stipulated Order must be pursued, if at all, in the court that entered and retained jurisdiction to enforce the Stipulated Order.

## II. Mr. Trudeau's Complaint Fails To State A Claim Upon Which Relief Can Be Granted

Should the Court conclude that it possesses jurisdiction, the complaint should nevertheless be dismissed pursuant to RCFC 12(6) because Mr. Trudeau has failed to state a claim upon which relief can be granted.

In his complaint, Mr. Trudeau alleges that the FTC "breached the Agreement" when it issued the press release on September 7, 2004. Compl. ¶ 2. Notably, however, Mr. Trudeau does not assert that issuance of the press release itself constituted a breach. Indeed, the complaint does not allege that the Stipulated Order contained a confidentiality clause, or otherwise limited the FTC's right to publicize the settlement. Instead, relying exclusively upon the venerable "implied covenant of good faith and faith dealing," Mr. Trudeau alleges that the FTC breached the contract "by issuing statements to the effect that the Agreement

is an admission of liability by Trudeau." Compl. ¶¶ 2, 32, 33.

As explained below, these allegations fail to state a claim upon which relief can be granted.

A. Legal Standards Under RCFC 12(b)(6)

Dismissal under RCFC 12(b)(6) is appropriate when the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy. New York Life Ins. Co. v. United States, 190 F.3d 1372, 1377 (Fed. Cir. 1999). A case may be properly dismissed under the rule if plaintiff "can prove no set of facts in support of his claim that would entitle him to relief." Southfork Sys., Inc. v. United States, 141 F.3d 1124, 1131 (Fed. Cir. 1998).

In reviewing a RCFC 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Thus, motions made under RCFC 12(b)(6) typically challenge the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. See Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys. Inc., 988 F.2d 1157, 1160-61 (Fed. Cir. 1993). Nevertheless, "to the extent that factual questions are raised and are material to the result," dismissal is appropriate where "there is no reasonable view of the facts which could support the claim." Id.

B. The Stipulated Order Did Not Impose Implied Duties Upon The FTC Regarding Publication of The Settlement

As an initial matter, the complaint fails to state a claim because the Stipulated Order did not impose implied duties upon the FTC regarding publication of the settlement.

As Mr. Trudeau correctly notes, it is generally recognized that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. See, e.g., P.R. Burke Corp. v. United States, 277 F.3d 1346, 1360 (Fed. Cir. 2002) (citing Restatement (Second) of Contracts § 205 (1979)). The scope of this implied duty, however, is not as universal as its recognition. See Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996) ("The law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties"). In order to ensure that the parties to a contract may accurately determine the risks they are assuming when they enter into a contract and, thus, make stable plans for the future based upon the terms of the contract, courts have adopted the principle that contracts should not be interpreted so as to impose obligations upon the parties that they did not agree to assume.

Regarding the implied covenant of good faith and fair dealing, this Court and other circuits have applied this principle by holding that there must be a link, or attachment,

between the covenant and an express substantive obligation to which the parties have mutually assented. See Bradley v. Chiron Corp., 136 F.3d 1317, 1326 (Fed. Cir. 1999) ("implied covenants of good faith and fair dealing are limited to assuring compliance with the express terms of the contract and cannot be extended to create new obligations not contemplated in the contract"); State of Alaska v. United States, 35 Fed. Cl. 685, 704 (1996), aff'd, 119 F.3d 16 (Fed. Cir. 1997) (Table) ("The implied obligation of good faith and fair dealing must attach to a specific substantive obligation, mutually assented to by the parties."); C.B.C. Enterprises, Inc. v. United States, 24 Cl. Ct. 1, 5 (1991) (generalized assertions, such as "failure to act in good faith, must have a contract performance referent to have any relevance.").[6]

In this case, the purported nexus between the express terms of the Stipulated Order and the FTC's implied duties is utterly farfetched. Mr. Trudeau bases his claim upon a single provision in the Stipulated Order, paragraph 8 of the "Findings" section,

---

[6] See also Comprehensive Care, 98 F.3d at 1066 ("the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms."); Sanpete Water Conservancy Dist. v. Carbon Water Conservancy Dist., 226 F.3d 1170, 1178 (10th Cir. 2000) ("we will not interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves.") (quoting Brown v. Moore, 973 P.2d 950, 954 (Utah 1998)); Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443 (7th Cir. 1992) (implied covenant of good faith "guides the construction of explicit terms in an agreement.").

which in its entirety states:

> Defendants and Relief Defendants expressly deny any wrongdoing or liability for any of the matters alleged in the Complaint and the civil contempt action. There have been no findings or admissions of wrongdoing or liability by the defendants or Relief Defendants other than the finding against Kevin Trudeau for contempt of Part I of the Stipulated Preliminary Injunction, entered by the Court on June 29, 2004.

Compl. ¶¶ 1, 9 & Exh. "A" at 3-4.

On its face, this provision can not be reasonably read as imposing any implied duties upon the FTC, much less an implied obligation to include or omit certain language from a press release. Paragraph 8 contains no promissory language, does not reference the FTC, and is placed among the district court's "findings," rather than the sections of the Stipulated Order imposing substantive obligations.

In this light, paragraph 8 is nothing more that a standard provision recognizing that, by settling the case, Mr. Trudeau did not admit any wrongdoing and the court did not find any wrongdoing on his part (except for the 2004 contempt finding). The FTC's acceptance of the Stipulated Order containing this provision simply acknowledged this circumstance, but did not impose implied duties upon the FTC.

Indeed, insofar as it was part of a permanent injunction order, paragraph 8 could not be interpreted as imposing implied duties. Federal Rule of Civil Procedure 65(d) requires

injunctions to "be specific in terms" and to "describe in reasonable detail . . . the act or acts sought to be restrained." Implied duties conflict with this requirement, since Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." Schmidt v. Lessard, 414 U.S. 473, 476 (1974). See also 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2955, at 310 (2d 1995) ("language employed in Rule 65(d) strongly suggests that only those acts specified by the order will be treated as within its scope and that no conduct or action will be prohibited by implication . . . .").

Thus, the complaint fails to state a claim upon which relief can be granted because paragraph 8 of the Stipulated Order did not impose implied duties upon the FTC regarding publication of the settlement.

C. No Reasonable View Of The Facts Alleged In The Complaint Can Support Mr. Trudeau's Claim

In any event, even assuming that the FTC had an implied duty not to publicize the settlement as an admission of wrongdoing by Mr. Trudeau, the complaint fails to state a claim upon which relief can be granted because no reasonable view of the facts alleged in the complaint can establish that the FTC's press release characterized the settlement as an admission of wrongdoing. In fact, the FTC's press release stated precisely

the opposite.

Although the complaint is not entirely clear, Mr. Trudeau apparently alleges that the press release mischaracterized the settlement as an admission of wrongdoing in two respects. The first is that it referred to Mr. Trudeau as a "habitual false advertiser" who had "misled American consumers for years." Compl. ¶ 10. According to Mr. Trudeau, this allegedly implies that the court found him to have engaged in false advertising and to be a habitual false advertiser. Compl. ¶ 11. There is nothing in the press release to suggest the court made the findings argued by Mr. Trudeau. In fact, the bulk of this allegation pertains to a quotation from an FTC employee, who is clearly stating what the FTC meant to accomplish and the importance of the Stipulated Order to the FTC, an intent that reflects the long litigation history described above. This statement by an FTC employee does not purport to state what the court held.

In addition, the press release contains repeated references to the fact that the Stipulated Order was a settlement. For example, the subtitle of the press release is: "Trudeau Settles Claims in Connection with Coral Calcium Supreme and Biotape." Compl., Exh. "B" at 1. The first sentence refers to the "settlement with Kevin Trudeau." Id. The third sentence states: "Trudeau agreed to these prohibitions and to pay the FTC $2

million to settle charges that he falsely claimed that a coral calcium product can cure cancer and other serious diseases. . . ." Id. Significantly, the fifth paragraph notes that the court did find Trudeau in contempt of court for violating a preliminary injunction and "ordered Trudeau to cease all marketing for coral calcium products." Id. Again, the press release did not represent that the court made holdings that it did not make; it simply describes the settlement in a manner different from what Mr. Trudeau now states he would prefer.

The second allegation of mischaracterization is that the press release states: "This stipulated final order is for settlement purposes only and does not constitute an admission by the defendants of a law violation." Compl., Exh. "B" at 2. Mr. Trudeau concedes that this disclaimer is "literally true," but finds fault in that it "conspicuously omits the agreement that the Order was not a 'finding' of wrongdoing." Compl., Exh. "C" at 2. As noted above, however, the press release did not state that the court made findings it did not make. It is not improper for the press release to have pointed out that the settlement was not an admission but not to go further and state what Judge Gettleman did not find.

Accordingly, the complaint fails to state a claim upon which relief can be granted because no reasonable view of the facts alleged in the complaint, even if taken as true, shows that the

wording of the FTC's press release breached any implied duty under the alleged settlement agreement.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant our motion and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. St., N.W.,
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 514-7969

Attorneys for Defendant

OF COUNSEL:

WILLIAM BLUMENTHAL
General Counsel

JOHN F. DALY
Deputy General Counsel
For Litigation

LAWRENCE DeMILLE-WAGMAN
Attorney
Federal Trade Commission
Washington, DC 20850
Tele: (202) 326-2448

April 28, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2005, a copy of foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian M. Simkin