No. 05-263C
(Judge George W. Miller)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

KEVIN TRUDEAU,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ERIC L. HIRSCHHORN (member of the bar)
Winston & Strawn LLP
1700 K Street, NW
Washington, D.C. 20006
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

DAVID J. BRADFORD*
DANIEL J. HURTADO*
Jenner & Block LLP
One IBM Plaza
Chicago, Illinois 60601
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

KIMBALL R. ANDERSON
(member of the bar)
RONALD ROTHSTEIN (member of the bar)
STEPHEN P. DURCHSLAG*
LISA K. SEILHEIMER (member of the bar)
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone : (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Plaintiff

May 31, 2005

*Court of Federal Claims admission pending

# TABLE OF CONTENTS


**Table of Authorities** .......... i

**Questions Presented** .......... 1

**Facts** .......... 3

**The FTC lawsuits** .......... 3

**The FTC breaches the Agreement** .......... 3

**The harm to Mr. Trudeau** .......... 5

**Applicable Legal Standards** .......... 7

**Argument** .......... 8

**I. This Court has jurisdiction over Mr. Trudeau's complaint.** .......... 8

**A. The complaint alleges the requisite elements of a breach of contract claim under the Tucker Act.** .......... 8

**B. The sovereign act doctrine does not deprive this Court of jurisdiction because the breach of contract was directed against Mr. Trudeau individually and was not of general application.** .......... 12

**C. The "sovereign capacity" theory of the *Kania/Awad* line of cases is inapplicable in the civil context.** .......... 16

**D. That a district court entered the Agreement does not deprive this Court of jurisdiction over Mr. Trudeau's claim for money damages.** .......... 22

**II. Because the complaint alleges the existence of a binding contract that the Government breached, it states a claim upon which relief can be granted.** .......... 24

**Conclusion** .......... 26

**Appendix** .......... A-1

**Agreement (Sept. 2, 2004)** .......... A-1

**FTC Press Release (Sept. 7, 2004)** .......... A-30

**Letter to the FTC (Feb. 16, 2005)** .......... A-33

**Letter from the FTC (Feb. 22, 2005)** .......... A-37

## TABLE OF AUTHORITIES

### CASES

*Alaska v. United States*, 35 Fed. Cl. 685 (1996), *aff'd*, 119 F.3d 16 (Fed. Cir. 1997) ....................25

*Amino Bros. Co. v. United States*, 178 Ct. C 372 F.2d 485 (1967) ....................15

*Arakaki v. United States*, 62 Fed. Cl. 244 (2004) ....................11

*Asco-Falcon II Shipping Co. v. United States*, 18 Cl. Ct. 484, 491 (1989) ....................24

*Awad v. United States*, 301 F.3d 1367 (Fed. Cir. 2002) ....................19

*Awad v. United States*, 61 Fed. Cl. 281 (2004) ....................16, 19

*Bloemker v. United States*, 229 Ct. Cl. 690 (1981) ....................19

*Broadmoore Corp.*, ASBCA No. 37028, 89-1 B.C.A. ¶ 21,441 (1998) ....................16

*Brown v. United States*, 389 F.3d 1296 (D.C. Cir. 2004) ....................23

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ....................23

*Cincinnati v. United States*, 153 F.3d 1375 (Fed. Cir. 1998) ....................11

*Cliffdale Associates, Inc.*, 103 F.T.C. 110 (1984) ....................24

*Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet v. United States*, 27 Fed. Cl. 173 (1992) ....................15, 17

*Conley v. Gibson*, 355 U.S. 41 (1957) ....................7, 8

*Connecticut National Bank v. Germain*, 503 U.S. 249 (1992) ....................20

*Conoco, Inc. v. United States*, 35 Fed. Cl. 309, 335 (1996), *rev'd on other grounds, sub nom. Marathon Oil v. United States*, 177 F.3d 1331 (Fed. Cir. 1999), *rev'd on other grounds, sub nom. Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604 (2000). ....................14, 15

*Detroit Housing Corp. v. United States*, 55 Fed. Cl. 410 (2003) ....................25

*Doe v. United States*, 37 Fed. Cl. 74 (1996), *aff'd*, 1997 U.S. App. LEXIS 36481 (Fed. Cir. Dec. 30, 1997) ....................16, 18

*Drakes v. United States*, 28 Fed. Cl. 190 (1993) ....................19

*Fausto v. United States*, 16 Cl. Ct. 750 (1989) ....................22

*Federal Trade Commission v. Trudeau*, Civ. Nos. 98-C-0168 and 03-C-3904 (N.D. Ill.) ....................3

*Franklin Savings Corporation v. United States*, 56 Fed. Cl. 720 (2003), *aff'd*, 97 Fed. Appx. 331 (Fed. Cir. 2004) ....................25

*Froemming Bros., Inc. v. United States*, 108 Ct. Cl. 193 (1947) ....................12

*Good v. United States*, 23 Cl. Ct. 744 (1991) ....................22

*Griswold v. United States*, 61 Fed. Cl. 458 (2004) ....................22

*Grundy v. United States*, 2 Cl. Ct. 596 (1983) ....................17, 19

*Horowitz v. United States*, 267 U.S. 458 (1925) ....................12

*James v. Caldera*, 159 F.3d 573 (Fed. Cir. 1998) ....................8

*Juda v. United States*, 6 Cl. Ct. 441 (1984) ....................13

*Kania v. United States*, 227 Ct. Cl. 458, 650 F.2d 264 (1981) ....................17, 18, 19, 20, 21

*Khan v. United States*, 201 F.3d 1375 (Fed. Cir. 2000) ....................8

*Marathon Oil Co. v. United States*, 374 F.3d 1123 (Fed. Cir. 2004) ....................20

*Massie v. United States*, 166 F.3d 1184 (Fed. Cir. 1999)— ....................22

*Maxima Corp v. United States*, 847 F.2d 1549 (Fed. Cir. 1988) ....................24

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) ....................24

*Mitchell v. United States*, 44 Fed. Cl. 437 (1999) ....................22, 23

*Morris v. United States*, 39 Fed. Cl. 7 (1979) ....................10

*Norfolk Dredging Co., Inc. v. United States*, 375 F.3d 1106 (Fed. Cir. 2004) ....................21

*Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298 (Fed. Cir. 2004) ....................20

*Ottinger v. United States*, 116 Ct. Cl. 282, 88 F. Supp. 881 (1950) ................................15

*Perez v. United States*, 156 F.3d 1366 (Fed. Cir. 1998) ....................................................7

*Pines Residential Treatment Center, Inc. v. United States*, 64 Fed. Cl. 307 (2005)..........22

*Ponder v. United States*, 117 F.3d 549 (Fed. Cir. 1997)....................................................8

*Pratt v. United States*, 50 Fed. Cl. 469 (2001)...........................................................24

*San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957 (Fed. Cir. 1989) ...........................................................................................................25

*San Juan City College v. United States*, 391 F.3d 1357 (Fed. Cir. 2004) ........................11

*Sanders v. United States*, 252 F.3d 1329 (Fed. Cir. 2001) ............................11, 17, 19, 20

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ..........................................................................7

*Silva v. United States*, 51 Fed. Cl. 374, *aff'd*, 51 Fed. Appx. 12 (Fed. Cir. 2002) ...........19

*Sun Oil Co. v. United States*, 215 Ct. Cl. 716, 572 F.2d 786 (1978) ...............................15

*Thompson Medical Co.*, 104 F.T.C. 648 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986) ...........................................................................................................24

*Trauma Serv. Group v. United States*, 104 F.3d 1321 (Fed. Cir. 1997) .............................8

*Travelers Indemnity Co. v. United States*, 16 Cl. Ct. 142, 149 (1988) .............................10

*United States v. Mitchell*, 445 U.S. 535 (1980) ...............................................................7

*United States v. Mitchell*, 463 U.S. 206 (1983) ...............................................................20

*United States v. Testan*, 424 U.S. 392 (1976)...................................................................8

*United States v. Winstar Corp.*, 518 U.S. 839 (1996)................................9, 12, 13, 14, 17

*United States v. Zajanckauskas*, 346 F. Supp. 2d 251 (D. Mass. 2003) ......................17, 20

*Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569 (Fed. Cir. 1997)......................13

**STATUTES AND COURT RULES**

15 U.S.C. §§ 45(a), 52 (2000).........................................................................................3

28 U.S.C. § 1346(a)(2)....................23

Fed. R. Crim. P. 35(b)....................18

28 U.S.C. § 1491 (2000)....................2, 7, 8, 20

**MISCELLANEOUS**

John Cibinic, Jr. & Ralph C. Nash, Jr., ADMINISTRATION OF GOVERNMENT CONTRACTS, (3d ed. 1995)....................13

Ronald G. Morgan, *Identifying Protected Government Acts Under the Sovereign Acts Doctrine: A Question of Acts and Actors*, 22 Pub. Cont. Law Journal 223, (1993)....................16

*Postscript: Dealing With the Sovereign*, 19 No. 2 Nash & Cibinic Rep. ....................20

*The Sovereign Act Defense: Is it Being Fairly Applied?*, 5 No. 10 NASH & CIBINIC REPORT 55 (1991). ....................21

Restatement (Second) of Contracts § 205 cmt. *d* (1981)....................25

Restatement (Second) of Contracts, § 346, cmt. *a* (1981)....................12, 17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KEVIN TRUDEAU, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-263C |
| THE UNITED STATES, | ) | (Judge George W. Miller) |
| Defendant. | ) | |

**Questions Presented**

1. Whether the Tucker Act gives this Court subject matter jurisdiction over a complaint seeking damages for the Government's breach of an express contract with the plaintiff.

2. Whether the "sovereign act" doctrine applies where the Government's breach of contract was aimed solely and directly at the plaintiff.

3. Whether the "sovereign capacity" doctrine applies where the breached contract was not made in connection with a criminal proceeding.

4. Whether this Court is deprived of jurisdiction where the breached contract was a settlement agreement in an action (a) under a statute that does not include a comprehensive remedial scheme and (b) before a court whose jurisdiction does not extend to contract claims exceeding $10,000.

**Statement of the Case**

This action stems from the Government's breach of a contract with a private individual—a breach by which the Federal Trade Commission ("FTC") seeks wrongfully to target plaintiff Kevin Trudeau and put him out of business. In publications and a popular series of TV

infomercials in which he markets best-selling self-help and health-related books and products, Mr. Trudeau has bluntly criticized federal agencies, particularly the FTC, for working with the pharmaceutical industry to stifle discussion and marketing of natural food and medicine alternatives.

In a September 2, 2004 agreement to settle civil enforcement litigation then pending in the United States District Court for the Northern District of Illinois, the Government expressly acknowledged that "[t]here have been no findings or admissions of wrongdoing or liability by [Kevin Trudeau]." Within days, however, the FTC issued a news release maligning Mr. Trudeau in language that directly contradicts the terms of the settlement agreement by falsely implying that Mr. Trudeau has been found guilty of false advertising.

The FTC's press release—in violation of the FTC's own standards for deceptive acts—gives the "net impression" that Mr. Trudeau has been found guilty of wrongdoing, is a habitual false advertiser, and was ordered to pay a fine. These are falsehoods that have deprived Mr. Trudeau of the benefit of the settlement agreement. Even after Mr. Trudeau complained to the FTC about its employees' misconduct, the agency refused to remove the misleading text from its release and refused to issue a retraction.

Accordingly, Mr. Trudeau has brought this action under the Tucker Act, 28 U.S.C. § 1491 (2000), seeking damages for the FTC's breach of contract. The Government has moved to dismiss the action pursuant to Rules of the Court of Federal Claims (RCFC) 12(b)(1) and 12(b)(6).

## Facts

**The FTC lawsuits**

The FTC, alleging that Mr. Trudeau had violated the FTC Act by engaging in false advertising practices, sued Mr. Trudeau and others in federal district court. *Federal Trade Commission v. Trudeau*, Civ. Nos. 98-C-0168 and 03-C-3904 (N.D. Ill.) (collectively the "FTC Action"); *see* 15 U.S.C. §§ 45(a), 52 (2000). After more than a year of litigation, the FTC and Mr. Trudeau agreed to resolve the case without an admission of wrongdoing or liability by any of the defendants, including Mr. Trudeau. Mr. Trudeau and the FTC accordingly entered into a written settlement agreement called a Stipulated Final Order for Permanent Injunction and Settlement of Claims (the "Agreement"). The Agreement was entered on the docket on or about September 2, 2004, becoming the final order of the district court. A copy of the Agreement appears at page A-1 of the appendix to this document.

With the exception of a reference to a prior contempt finding that has no bearing on this matter, Mr. Trudeau admitted to no wrongdoing or liability. The Agreement expressly provides that "[t]here have been no findings or admissions of wrongdoing or liability by the Defendants or Relief defendants other than the finding against Kevin Trudeau for contempt of Part I of the Stipulated Preliminary Injunction, entered by the Court on June 29, 2004." Agreement ¶ 8.

**The FTC breaches the Agreement**

Notwithstanding the Agreement's express statement that Mr. Trudeau had not been found liable in the FTC Action, on or about September 7, 2004, the FTC effectively advised the media that Trudeau had been found guilty of misconduct (the "FTC Press Release" or the "Press Release"). The FTC Press Release, headlined "Kevin Trudeau Banned From Infomercials,"

refers to Mr. Trudeau as a "habitual false advertiser" who had "misled American consumers for years." Specifically, the Press Release includes the following statement:

> "This ban is meant to shut down an infomercial empire that has misled American consumers for years," said Lydia Parnes, Acting Director of the FTC's Bureau of Consumer Protection. "Other habitual false advertisers should take a lesson; mend your ways or face serious consequences."

A copy of the FTC Press Release appears at page A-31 of the appendix to this document.

In fact, Mr. Trudeau is not "banned" from infomercials and there was no finding that he misled consumers, engaged in false advertising (habitually or otherwise), or engaged in other practices claimed in the FTC's Press Release. Thus, even the headline of the Press Release is misleading. Indeed, Mr. Trudeau currently is airing an infomercial for a book that is critical of the FTC. Although the FTC may have alleged that Mr. Trudeau is a false advertiser, the district court made no such finding. In the end, the FTC dropped its suit against Mr. Trudeau in favor of the Agreement, which expressly provides that "[t]here have been no findings or admissions of wrongdoing or liability by [Kevin Trudeau]."

The FTC's allegations were not proven, were not agreed to by Mr. Trudeau, and were not found as facts by any court, yet the FTC issued its false and misleading Press Release in an attempt to injure Mr. Trudeau's business interests and thereby obtain what it had relinquished in agreeing to the settlement. The Government has breached the Agreement, including its implied covenant of good faith and fair dealing, by issuing statements to the effect that Mr. Trudeau has been found liable. The statements by the Government, through its FTC staff, defeated an essential, bargained-for provision of the Agreement.

The Press Release indicates in a note at its very end that the stipulated final order "does not constitute an admission by defendants," despite the overwhelming suggestion to the contrary in the remainder of the release. The Government's own standards make clear that this

afterthought is insufficient to prevent the Press Release from being deceptive. *See, e.g.*, FTC, *Dot Com Disclosures—Information About Online Advertising*, at http://www.ftc.gov/bcp/onlie/pubs/buspubs/dotcom ("If a disclosure provides information that contradicts a claim, the disclosure will not be sufficient to prevent the ad from being deceptive"). Moreover, the disclaimer does not contain any statement that Mr. Trudeau wasn't found to have committed any misconduct.

Each statement by the Government representing the Agreement as a finding of liability on the part of Mr. Trudeau, including each publication of the Press Release on the FTC website, constitutes a separate, actionable breach of the Agreement.

**The harm to Mr. Trudeau**

The FTC Press Release has been widely reported and is prominently available on the Internet. In fact, the FTC Press Release is still posted on the agency's website at http://www.ftc.gov/opa/2004/09/trudeaucoral.htm. The FTC has refused to remove or revise the Press Release, despite demands from Mr. Trudeau to do so.

As discussed in detail in the complaint, a person searching the Internet for information about Mr. Trudeau likely will find information relating to the FTC's contention that he is a "habitual false advertiser" and that he allegedly ran "an infomercial empire that has misled American consumers for years." In fact, the FTC Press Release is prominently available to anyone seeking information about Mr. Trudeau. A search of "Kevin Trudeau" on the popular search-engine "Google" returns the FTC Press Release, with its characterization of Mr. Trudeau as a "false advertiser," as the second non-sponsored link. A Google search of the terms "Kevin Trudeau" and "false" and "advertise," which are key words in the FTC Press Release, returns over 800 links to various websites. Over 100 of those links include the word "habitual," a word

that first appeared in articles and messages about Mr. Trudeau only after the FTC Press Release referred to him as a "habitual false advertiser."

Because Mr. Trudeau is a well-known personality, the press took an immediate interest in the story about his settlement with the FTC. Unfortunately, many media outlets appear to have relied primarily, if not entirely, on the Press Release and its characterization of Mr. Trudeau as a "habitual false advertiser." The FTC knew and intended that this would occur.

Media across the country picked up an Associated Press story adopting the FTC's characterization of Mr. Trudeau as a "habitual false advertiser" and reported on the resolution of the FTC's case against Mr. Trudeau. Stories were reported by Cable News Network, WTOP Radio, the New York Times, the Los Angeles Times, and the Washington Post, among others. Several of these stories extracted words directly from the FTC Press Release to characterize Mr. Trudeau as a "habitual false advertiser." Many of these outlets maintain archives that are available for viewing on the Internet. The falsehoods espoused in the Press Release thus have been proliferated across the United States. That has been Mr. Trudeau's punishment for entering into a good-faith settlement with the FTC—an agreement whose essence, from Mr. Trudeau's standpoint, was its statement that he had not been found to have engaged in wrongdoing.

Mr. Trudeau is the author of a number of publications and learning aids, including the best-selling books, *Kevin Trudeau's Mega Memory: How to Release Your Superpower Memory in 30 Minutes or Less a Day* and *Natural Cures "They" Don't Want You to Know About.* Mr. Trudeau's livelihood depends upon his ability to sell his books and other publications. Public perceptions are highly relevant to such sales. The inaccurate belief of members of the public that Mr. Trudeau is a "habitual false advertiser" whose infomercial empire has misled American

consumers—a belief fostered by the Press Release—has damaged Mr. Trudeau. These damages are the proximate result of the Government's breach of the Agreement.

On February 16, 2005, Mr. Trudeau's counsel asked the FTC to remove the misleading press release from its website and to issue and disseminate a corrective retraction. A copy of that request appears at page A-33 of the appendix to this document. On February 22, 2005, the FTC responded, claiming that "nothing in the press release refers to any 'findings' of fact or law" and disputing that such an inference reasonably could be drawn from the Press Release. The agency refused to take any of the requested actions. A copy of that response appears at page A-37 of the appendix to this document.

Based on these facts, plaintiff has filed this action alleging breach of the Agreement, which is valid and binding.

**Applicable Legal Standards**

In order to evaluate the merits of defendant's motion asserting lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint must be presumed to be true and construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Under RCFC 12(b)(1), claims should be dismissed for lack of subject matter jurisdiction only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998).

Under the Tucker Act, this Court has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a) (2000). The Tucker Act itself "does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445

U.S. 535, 538 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)). Instead, plaintiff "must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages." *Khan v. United States*, 201 F.3d 1375, 1377 (Fed. Cir. 2000) (citing *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998)).

The Government asks that in the event jurisdiction is established, the Court dismiss the complaint for failure to state a claim, pursuant to RCFC 12(b)(6). A complaint cannot be dismissed on this ground, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). In resolving the motion the Court "must accept the plaintiff's factual allegations in the complaint as true, drawing all inferences in favor of the plaintiff." *Ponder v. United States*, 117 F.3d 549, 552 (Fed. Cir. 1997).

## Argument

### I. This Court has jurisdiction over Mr. Trudeau's complaint.

#### A. The complaint alleges the requisite elements of a breach of contract claim under the Tucker Act.

To present a claim over which this Court has jurisdiction under the Tucker Act, Mr. Trudeau must establish that he is bringing a suit for money damages against the United States that does not sound in tort and is founded upon "any express or implied contract with the United States." *See* 28 U.S.C. § 1491 (2000). Plaintiff has squarely met this burden.[1]

The contract at issue was entered into by Mr. Trudeau and the Government on September 2, 2004 when they executed the Agreement settling all claims in the FTC Action. This

[1] As established below, the sovereign act and sovereign capacity defenses are unavailable to the Government in this case.

Agreement is a valid and binding contract. An essential, bargained-for element of the Agreement was the express undertaking by the Government that Kevin Trudeau, by settling the action and entering into the Agreement, was not admitting—and had not been found guilty of—any fault, wrongdoing, or liability. The Agreement reflects no admission or finding of wrongdoing or liability by Mr. Trudeau. In fact, the Agreement expressly states that "[t]here have been no findings or admissions of wrongdoing or liability by the Defendants or Relief defendants other than the finding against Kevin Trudeau for contempt of Part I of the Stipulated Preliminary Injunction, entered by the Court on June 29, 2004."

That the Agreement doesn't provide expressly for damages in the event of a breach is no bar to Tucker Act jurisdiction. As the Supreme Court pointed out in *Winstar*—a Tucker Act case, *see United States v. Winstar Corp.*, 518 U.S. 839, 910 (1996) (plurality opinion)—"few contract cases would be in court if contract language had articulated the parties' postbreach positions as clearly as might have been done, and the failure to specify remedies in the contract is no reason to find that the parties intended no remedy at all." *Id.* at 870 n. 15.

The contracts at issue in *Winstar* offer an instructive example for the case at bar. The government agreed to treat "supervisory goodwill" as an asset of healthy thrift institutions that agreed to take over unhealthy ones. The agreements did not provide for a remedy in the event of breach. The Court found the Government breached the agreements by refusing to pay damages caused to the thrifts by an unanticipated change in the governing law. *Id.* at 869. The Government nevertheless contended that it should not be held liable. That, however, is not the law. Where, as here, the Government "abrogate[s] the *essential bargain* of the contract[]," the Government thereby breaches the contract and is liable under the Tucker Act. *Id.* at 924 (Scalia, J., concurring) (emphasis in original).

The essential bargain of the Government's contract with Mr. Trudeau, of course, was that he would agree to refrain from engaging in certain specified activities in the *future* but would not admit liability or be found liable for any *past* conduct. The Government breached the Agreement, including its implied covenant of good faith and fair dealing, by officially stating, in effect, that the Agreement constitutes an admission and/or a finding of liability or wrongdoing by Mr. Trudeau. With intent to injure him, the FTC issued a press release on September 7, 2004 announcing to the world that Mr. Trudeau had engaged in the wrongdoing alleged in the FTC's Complaint and that he was a "habitual false advertiser" who had "misled American consumers for years." The plain import of this statement in the context of the press release is that the FTC was announcing a legally binding determination that Mr. Trudeau had been found liable.

Every contract with the United States Government carries with it an implied covenant of good faith that prevents one party from taking action that deprives the other party of bargained-for benefits. *Morris v. United States*, 39 Fed. Cl. 7, 14 (1979); *see Travelers Indemnity Co. v. United States*, 16 Cl. Ct. 142, 149 (1988) (recognizing that implied covenant of good faith requires "honest and fair consideration"). Importantly, the statements by the Government, through its FTC staff, defeated an essential, bargained-for provision of the Agreement. Specifically, the Agreement provides that "[Trudeau] … expressly den[ies] any wrongdoing or liability for any matters alleged in the [FTC's] Complaint and the civil contempt action." The Government had further agreed that, with the exception of a collateral civil contempt action, "[t]here have been no findings or admissions of wrongdoing or liability by [Kevin Trudeau]." The Government breached these contractual provisions in deliberate disregard of the Agreement and in an effort to injure Mr. Trudeau and destroy his business.

As noted above, the Press Release indicates in a note quietly tucked at its very end that the Agreement "does not constitute an admission by defendants," while every other aspect of the release shouts the opposite. This violates the Government's own standards for false and deceptive advertising. *See, e.g.*, FTC, *Dot Com Disclosures—Information About Online Advertising*, at http://www.ftc.gov/bcp/online/pubs/buspubs/dotcom ("If a disclosure provides information that contradicts a claim, the disclosure will not be sufficient to prevent the ad from being deceptive."). Further, the hidden disclaimer says nothing at all to dispel the impression that a court had found Mr. Trudeau guilty of misconduct.

Each statement by the Government representing the Agreement as an admission or finding of liability by Mr. Trudeau, including each "hit" on the Press Release on the FTC website, constitutes a separate and discrete breach of the Agreement.

Significantly, in this case, Mr. Trudeau has made a good-faith allegation that he is entitled to money damages from the United States because of the FTC's breach of contract. Where a claimant makes a nonfriviolous allegation that he is entitled to money damages because of a contract with the United States, this Court should exercise its jurisdiction. *See Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (holding that "the invocation of [a] . . . contract . . . is sufficient . . . to set forth a basis for subject-matter jurisdiction"); *Arakaki v. United States*, 62 Fed. Cl. 244, 247 (2004) (stating that "[f]or the purposes of this motion, the alleged contract serves as a sufficient basis for the court's jurisdiction").

Additionally, money damages are presumed from the breach of the Agreement. Recently the Court of Appeals for the Federal Circuit acknowledged that "[n]ormally contracts do not contain provisions specifying the basis for the award of damages in case of breach." *San Juan City College v. United States*, 391 F.3d 1357, 1361 (Fed. Cir. 2004). Similarly, in *Sanders v.*

*United States*, 252 F.3d 1329 (Fed. Cir. 2001), the Federal Circuit concluded that "in the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement." A plurality of the Supreme Court noted in *Winstar* that "damages are always the default remedy for breach of contract.'" *Winstar*, 518 U.S. at 885 (plurality opinion); *see also* Restatement (Second) of Contracts, § 346, cmt. *a* (1981). Because Mr. Trudeau's Agreement with the FTC was entered into in the civil context, these authorities support the availability of money damages for the FTC's breach of the Agreement.

For all of these reasons, plaintiff has alleged the existence of a binding contract over which this Court has Tucker Act jurisdiction.

**B. The sovereign act doctrine does not deprive this Court of jurisdiction because the breach of contract was directed against Mr. Trudeau individually and was not of general application.**

The Government conflates two sovereignty-based defenses—the sovereign act doctrine and the sovereign capacity rule—but neither applies here. Simply stated, the sovereign act doctrine provides that if the United States makes an agreement with a private party and thereafter the agreement is affected by legislation or other government action that is *general* in character, the later act is not attributed to the Government as contracting party and does not place the Government-as-contracting-party in breach. *Winstar*, 518 U.S. at 891-903 (plurality opinion). The sovereign act doctrine is based upon the principle that "the Government as a contractor is excused from the performance of its contracts if the Government as a sovereign makes laws, regulations, or orders which prevent that performance." *Froemming Bros., Inc. v. United States*, 108 Ct. Cl. 193, 212 (1947).

Such laws, however, must be "public and general" in order for the doctrine to enter the picture. *Horowitz v. United States*, 267 U.S. 458, 461 (1925). "The sovereign act defense has no

application when the challenged government actions do not have public and general applicability, *or when the actions were focused principally and primarily on the direct relationship with the injured claimant*." *Juda v. United States*, 6 Cl. Ct. 441, 454 (1984) (emphasis added). The FTC was not protected by the sovereign act doctrine when it breached the Agreement because its action against Mr. Trudeau was targeted against him and was not a general or public act.[2] *See, e.g.*, John Cibinic, Jr. & Ralph C. Nash, Jr., ADMINISTRATION OF GOVERNMENT CONTRACTS, 365-73 (3d ed. 1995) (discussing sovereign act doctrine cases).

In determining whether a Government act comes within this doctrine, the courts focus upon whether the Government act "is directed at only the contractor or whether it affects the public generally." *Id.* at 367. The Supreme Court most recently applied these principles in *Winstar*, when it declined to apply the sovereign acts defense to shield the Government from liability resulting from the passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). The *Winstar* plurality explained that the sovereign act doctrine is designed to distinguish between the Government's roles as contractor and sovereign. *Winstar*, 518 U.S. at 892 (plurality opinion). When the Government enters into a contract, "its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Id.* at 895. That is, the "Government-as-contractor cannot exercise the power of its twin, the Government-as-sovereign, for the purpose of altering, modifying, obstructing or violating the particular contracts into which it had entered with private parties. Such action would give the Government-as-contractor powers that private contracting parties lack." *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1575 (Fed. Cir. 1997) (discussing *Winstar*). On the other hand, the Government-as-sovereign must remain free to

---

2 As discussed in Part I.C. below, the cases on which the Government relies setting forth

exercise its powers. The sovereign act doctrine attempts to "balance[ ] the Government's need for freedom to legislate with its obligation to honor its contracts by asking whether the sovereign act is properly attributable to the Government as contractor." *Id.* (citing *Winstar*, 518 U.S. at 893). Thus the doctrine requires a case-specific inquiry that focuses on the scope of the government action in an effort to determine whether, on balance, a government act was designed to target prior governmental contracts. *Id.*

Applying these principles, the *Winstar* plurality concluded that the sovereign act defense could not prevail because FIRREA was not a "public or general" act. *Id.* at 893-903. The Court reasoned that because the object of the sovereign act doctrine is to place the Government as contractor on the same footing as that of a private contractor, the defense would not hold up if there were a judicial determination of the statute being "tainted by a governmental object of self-relief" rather than being "regulatory legislation that is relatively free of Government self-interest." *Id.* at 896.

The sovereign act defense has no application here. That the FTC is charged with acting in the public interest is irrelevant, for every government agency has such a responsibility. The issue is whether the action that affected the Agreement was of a public and general nature, as opposed to being directed at Mr. Trudeau, an individual citizen. "[G]overnmental acts that directly or intentionally, as opposed to incidentally, impede specific contracts rather than promote the public interest are not sovereign acts within the meaning of this defense. *A fortiori*, a governmental act whose effect was specifically designed to obstruct performance is not a sovereign act." *Conoco, Inc. v. United States*, 35 Fed. Cl. 309, 335 (1996), *rev'd on other grounds, sub nom. Marathon Oil v. United States*, 177 F.3d 1331 (Fed. Cir. 1999), *rev'd on other*

---

the proprietary/sovereign distinction are distinguishable from the case at bar.

*grounds, sub nom. Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604 (2000).

The FTC's breach of its contract with Mr. Trudeau was "directed principally and primarily at" his contractual rights. Accordingly, the sovereign act doctrine has no place in this case because its purpose is to ensure that an individual cannot recover against the Government for acts that affect the public generally. As this Court has stated: "The sovereign act defense . . . has no application when the challenged government actions do not have public or general applicability, or when the actions were focused principally and primarily on the direct relationship with the claimant." *Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet v. United States*, 27 Fed. Cl. 173, 179 (1992); *accord Horowitz*, 267 U.S. 458 (1925) (applying doctrine to preclude recovery for railroad administration's embargo resulting in delay of silk shipment purchased from Government); *Amino Bros Co. v. United States*, 178 Ct. Cl. 515, 372 F.2d 485 (1967) (holding that doctrine precluded recovery for contractor damaged by washout caused by Corps of Engineers' release of water from dam located 88 miles upstream); *Ottinger v. United States*, 116 Ct. Cl. 282, 285, 88 F. Supp. 881, 883 (1950) (stating "that to treat every act of a Government agent, done in the name of the Government, as an act of sovereignty within the meaning of the doctrine here under discussion would be a retreat, without reason, from the purpose of the statute permitting citizens to sue the United States for breach of contract."); *Sun Oil Co. v. United States*, 215 Ct. Cl. 716, 572 F.2d 786 (1978) (holding that Secretary of the Interior's denial of offshore oil permits not a sovereign act because directed at plaintiff's contractual right to install platform and to extract oil and gas therefrom); *Conoco*, 35 Fed. Cl. 309 (denying Government's attempt to invoke doctrine against contractor because Outer Banks Protection Act of 1990 was intended to obstruct

performance of specific governmental contract). The case law establishes that where the governmental act that affects a preexisting contract between the Government and a private party is directed against an individual contractor, the sovereign act doctrine does not apply.

Application of the doctrine would be particularly inappropriate where, as here, the agency interfering with (in this case breaching) the contract is the very agency that entered into the contract. By contrast, where the interfering actor is an agency other than the contracting agency, the doctrine generally applies and government liability is precluded. *See* Ronald G. Morgan, *Identifying Protected Government Acts Under the Sovereign Acts Doctrine: A Question of Acts and Actors*, 22 Pub. Cont. Law Journal 223, 228 (1993) (citing *Broadmoore Corp.*, ASBCA No. 37028, 89-1 BCA ¶ 21,441 (1998) (EPA's banning of chlordane was sovereign act and thus Navy, as contracting agency, not liable for damages resulting from ban)). Here, however, the contracting agency and the breaching agency are one and the same. *See id.* This additional factor reinforces the case for rejection of the sovereign act defense.

### C. The "sovereign capacity" theory of the *Kania/Awad* line of cases is inapplicable in the civil context.

The Government also proffers a second sovereignty-based defense—namely that because the Agreement was made in the FTC's "sovereign capacity," the agency's breach is not subject to redress under the Tucker Act. Defendant's Motion to Dismiss at 14-20. In support of this proposition, the Government relies on a limited line of cases that, it claims, provides that where a contract is made by the United States in its sovereign capacity, the Government's breach of the contract is not within this Court's jurisdiction. *See Awad v. United States*, 61 Fed. Cl. 281 (2004) (citing *Doe v. United States*, 37 Fed. Cl. 74, 77 (1996)).

The case at bar is readily distinguishable. Significantly, almost all the cases on which the Government relies arose in the criminal context. *E.g., Awad v. United States*, 61 Fed. Cl. 281

(2004); *Kania v. United States*, 227 Ct. Cl. 458, 650 F.2d 264 (1981); *Grundy v. United States*, 2 Cl. Ct. 596 (1983). By contrast, the instant case involves the FTC's breach of an agreement to settle civil litigation. Moreover, the one case cited by the Government that didn't arise in the criminal context made much of the requirement—not satisfied here—that the complained-of act be directed at the public generally rather than at the other contracting party. *Commonwealth of Kentucky,* 27 Fed. Cl. at 179.

First and foremost, the Court of Appeals for the Federal Circuit recently made clear that a "sovereign capacity" defense is available only in the criminal context:

> [I]n the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement. Indeed, as a plurality of the Supreme Court noted in *United States v. Winstar Corp.*, 518 U.S. 839, 135 L. Ed. 2d 964, 116 S. Ct. 2432 (1996), "damages are always the default remedy for breach of contract." *Id.* at 885 (plurality opinion) (citing, e.g., Restatement (Second) of Contracts § 346, cmt. a (1981)). Although agreements that are in part civil and in part criminal may be governed by the presumption concerning the availability of damages in civil cases, a different rule obtains where the agreement is entirely concerned with the conduct of the parties in a *criminal case*. A decision of one of our predecessor courts, the Court of Claims, has previously established that *in those circumstances* a damages remedy is not ordinarily available.

*Sanders*, 252 F.3d at 1334 (emphasis added; citing *Kania*, 227 Ct. Cl. 458, 650 F.2d 264);[3] *see United States v. Zajanckauskas*, 346 F. Supp. 2d 251 (D. Mass. 2003) (Little Tucker Act case explaining *Sanders*). "Not only did the Court in *Sanders* fail to mention the sovereign/proprietor distinction found in its earlier *Kania* opinion, but it also characterized that opinion as premised on the criminal/civil distinction." *Zajanckauskas*, 346 F. Supp. 2d at 256-57.

It is instructive to analyze the rationales underlying *Kania* and its progeny, cases in which this Court has declined to exercise jurisdiction over agreements that were the outgrowth of

---

[3] Indeed, *Sanders* even envisages the possibility of a damages remedy in the criminal context, but only if the relevant agreement expressly so promises. *Sanders*, 252 F.3d at 1336.

criminal matters. These decisions establish that the concerns they articulate are specific to criminal matters and are not found here. Mr. Kania, for example, alleged that the U.S. Attorney had breached a contract providing that the Government would not prosecute him in return for this truthful testimony before the grand jury. Kania alleged that he had testified truthfully and that the Government had breached the agreement by indicting him. The Court of Claims dismissed his suit after concluding there was "no contract sufficient to satisfy this court's jurisdictional requirements." *Kania*, 227 Ct. Cl. at 466, 650 F.2d at 269. Importantly, the declination of jurisdiction in *Kania* was based on the premise that it is unreasonable to assume that Congress, in enacting section 1491(a)(1), intended this Court to become involved in the "delicate and sensitive business of conducting criminal trials." *See id.*, 227 Ct. Cl. at 466, 650 F.2d at 269.

Similarly, in *Doe v. United States*, 37 Fed. Cl. 74 (1996), *aff'd*, 1997 U.S. App. LEXIS 36481 (Fed. Cir. Dec. 30, 1997), the Court in declining to exercise jurisdiction over plaintiff's suit for a breach of a cooperation agreement said that—

> because this Court is suited to provide remedies for breaches of civil contracts, and not remedies for breaches of agreements in the *criminal* context, a plaintiff's remedies for breach of a Fed. R. Crim. P. 35(b) cooperation agreement lie within the jurisdiction of the courts in the federal *criminal* system, not this Court.

*Id.* at 78 (emphasis added). The court went on to state that "Being a creation of the criminal justice system, it is logical that the remedies for a breach of plea agreement[, as well as for a breach of a cooperation agreement pursuant to Fed. R. Crim. P. 35(b)] are found within that system." *Id.* It also reasoned it was "ill-suited to manage the different purposes and different motivations that such criminal agreements serve . . . . A breach of the cooperation agreement between the plaintiff and the Government does not generate the civil remedies, such as monetary damages, that the plaintiff seeks." *Id.*

The criminal/civil distinction apparent in *Kania* and *Doe* also emerges from the other cases the Government cites in support of its argument that the case at bar, which involves a *civil* agreement, must be dismissed pursuant to the sovereign capacity doctrine. *See Awad*, 61 Fed. Cl. at 284 (declining to exercise jurisdiction over matter in which witness who had assisted in prosecution of terrorist group alleged that Justice Department had breached contract to provide him with U.S. citizenship and a U.S. passport in exchange for his cooperation);[4] *Sanders*, 252 F.3d 1329 (holding that under Tucker Act, Court of Federal Claims lacked subject matter jurisdiction over claim that Government breached a bail agreement); *Silva v. United States*, 51 Fed. Cl. 374, 377, *aff'd*, 51 Fed. Appx. 12 (Fed. Cir. 2002) (finding lack of jurisdiction over agreement between two private parties that was made "for the purpose of furthering undercover law enforcement operations"); *Drakes v. United States*, 28 Fed. Cl. 190 (1993) (declining jurisdiction over action in which inmate alleged that United States had breached plea agreement); *Grundy v. United States*, 2 Cl. Ct. 596, 597-98 (1983) (declining jurisdiction over contract for protection of plaintiff who had housed participants in Witness Protection Program); *Bloemker v. United States*, 229 Ct. Cl. 690 (1981) (holding that unless terms show that parties intended to create contract-type liability, even express agreements relating to conduct of criminal trials do not come within Tucker Act).

As noted above, the significance of this criminal/civil distinction is confirmed by the Federal Circuit's recent decision in *Sanders*. *Sanders* focused exclusively on the difference between civil and criminal contracts and characterized *Kania* and its progeny as premised on that

---

4 Although the Government cites *Awad v. United States*, 301 F.3d 1367, 1375 (Fed. Cir. 2002) for the proposition that "not all agreements that can be fairly characterized as an express or implied contract with the United States are sufficient to invoke this Court's Tucker Act jurisdiction," the Federal Circuit did not reach the issue of whether the agreement had been entered into in a sovereign capacity, but left that issue to the Court of Federal Claims. *See id.*

distinction. *See Sanders*, 252 F.3d at 1334. To that end, *Sanders* points out that (1) where the agreement concerns only conduct in connection with a criminal case, a damages remedy ordinarily is not available, and (2) in light of the interest of the United States in administering the criminal justice system it was "'particularly unreasonable to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive business of conducting criminal trials.'" *Sanders*, 252 F.3d at 1335-36 (quoting *Kania*, 650 F.2d at 269). Thus *Sanders* "significantly recast the sovereign/proprietor distinction in *Kania* as a distinction between civil and criminal contracts to which the United States is a party." *Zajanckauskas*, 346 F. Supp. 2d at 257. Although *Sanders* affirmed that the Court of Federal Claims lacked jurisdiction over a claim that the Government had breached a bail agreement, its reasoning requires a finding of jurisdiction in the civil context of Mr. Trudeau's action.

Additionally, a decision to decline jurisdiction over this claim would contravene the plain language of the Tucker Act. The Tucker Act is a waiver of sovereign immunity. *United States v. Mitchell*, 463 U.S. 206 (1983); *Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004). Although courts must construe a waiver of sovereign immunity strictly, they are at the same time obliged to enforce an unambiguous waiver. *Marathon Oil Co. v. United States*, 374 F.3d 1123, 1127 (Fed. Cir. 2004).

The Tucker Act "reflects an all-encompassing, unambiguous waiver of sovereign immunity regarding contract claims, with no mention of the 'governmental/proprietary' distinction." *Postscript: Dealing With the Sovereign*, 19 No. 2 Nash & Cibinic Rep. p. 6. The Tucker Act states in pertinent part that the "Court of Federal Claims shall have jurisdiction to render judgment upon *any* claim against the United States founded . . . upon *any* express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2000) (emphasis added).

It is a fundamental rule of statutory construction that courts must not depart from the plain language of a statute absent ambiguity. *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992). There is nothing ambiguous about the term "any." The statutory language draws no distinction between contracts to which the United States is a party as a sovereign and those to which it is a party as a proprietor. At most the sovereign/proprietary distinction is based upon a mere "supposition of what Congress 'had in mind'" *Zajackauskas*, 346 F. Supp. 2d at 257-58. The *Kania* court cited to no legislative history in support of its consideration of congressional intent. For this reason, the departure from the statutory language in the *Kania* line of cases is unwarranted and erroneous. *See Norfolk Dredging Co., Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004). The Government's interpretation of the *Kania/Awad* line of decisions would carve out an exception to the Tucker Act that finds no support in the text of that statute. For this further reason, Mr. Trudeau is entitled to his day in this Court.

Because the Agreement is civil rather than criminal in nature and is precisely the type of contract this Court is equipped, and indeed required, to hear, this Court should exercise its jurisdiction over this action.

Finally, as a practical matter, if the position espoused by the Government in this action were to be sustained, then all should be wary of contracting with the Government. Simply because the Government—

> has the sheer power to claim that a certain action was taken in its asserted sovereign capacity does not mean that a Government agency may disregard its voluntary contract obligations, nor that it may ride roughshod over the citizens' rights by simply donning the cloak of immunity without showing a necessity for doing so. That would mean going back more than 100 years to the time when we still had the reflected doctrine of "the King can do no wrong."

*The Sovereign Act Defense: Is it Being Fairly Applied?*, 5 No. 10 NASH & CIBINIC REPORT, 55 (1991).

**D. That a district court entered the Agreement does not deprive this Court of jurisdiction over Mr. Trudeau's claim for money damages.**

The Government also claims that this action must be dismissed because the district court in Illinois has retained jurisdiction over the FTC action. Defendant's Motion to Dismiss at 20-22. This argument fails for at least two reasons.

First, the decisions abjuring Tucker Act jurisdiction in similar contexts arise where there is an integrated scheme or a comprehensive remedy placing responsibility elsewhere. *E.g., Pines Residential Treatment Center, Inc. v. United States*, 64 Fed. Cl. 307 (2005) (Medicare); *Griswold v. United States*, 61 Fed. Cl. 458 (2004) (Title VII of Civil Rights Act of 1964); *Mitchell v. United States*, 44 Fed. Cl. 437 (1999) (same); *Good v. United States*, 23 Cl. Ct. 744 (1991) (Civil Service Reform Act); *Fausto v. United States*, 16 Cl. Ct. 750 (1989) (Title VII). No such scheme is present here. For this reason, the instant case is more like the first case cited by the Government—*Massie v. United States*, 166 F.3d 1184 (Fed. Cir. 1999)—than the other decisions on which the Government relies.

Ms. Massie had settled a claim against the Navy under the Military Claims Act ("MCA") by agreeing to have the Government make monthly payments for her injured child. *Id.* at 1186-87. To provide for the payment stream, the Government purchased an annuity from a private insurance company. *Id.* at 1187. When the insolvency of the insurance company led to a sharp reduction in the amount of the payments, Ms. Massie brought a Tucker Act suit in the Court of Federal Claims. *Id.* The Government sought dismissal "because the MCA controls and the [settlement agreement] is not a contract to which the Tucker Act . . . applies." *Id.* The Federal Circuit noted that the settlement agreement "presumptively satisfies the Tucker Act," subject to an exception "if Congress has placed jurisdiction over it elsewhere." *Id.* at 1188. The court held that even if the MCA were viewed as constituting a comprehensive scheme for claims handling,

that statute "does not address the breach of agreements to pay MCA claims." *Id.* Given this fact and the fact that "disposition of the contract claim would not require review of subject matter reserved to another body"—which also is the case here—the Federal Circuit found that jurisdiction existed under the Tucker Act. *Id.* at 1189.

Of like import is a recent decision of the D.C. Circuit. *Brown v. United States*, 389 F.3d 1296 (D.C. Cir. 2004). Ms. Brown had lodged an EEOC complaint against her employer, the Department of Agriculture, that ultimately resulted in a settlement agreement. When she later brought suit in district court for, inter alia, common law breach of the agreement, the D.C. Circuit upheld the dismissal of that claim:

> In order for Brown either to pursue remedies for breach of contract or to seek relief under Title VII, she must first prove the Department breached the settlement agreement. And because this *contract question* arises in a suit against the United States for more than $10,000 in damages, jurisdiction to decide whether the Department breached the settlement agreement lies *exclusively* in the Court of Federal Claims.

*Id.* at 1297 (emphasis added).

Second, and perhaps more important, the district court in Illinois can only "retain" such jurisdiction as it possessed in the first place. Under the Little Tucker Act, the jurisdiction of the district courts in contract claims against the Government is limited to $10,000—an amount considerably less than the damage done to Mr. Trudeau by the FTC's misconduct. *See* 28 U.S.C. § 1346(a)(2) (2000). We know of no decision—and the Government cites none—holding that a district court's retention of jurisdiction over an injunction expands its breach-of-contract jurisdiction over the Government beyond the limits expressly set by Congress in the Judicial Code. Indeed, the language from *Brown* quoted above suggests precisely the contrary. *See Brown*, 389 F.3d at 1297. The Government's effort to institute a game of "'jurisdictional ping-pong,'" *Mitchell*, 44 Fed. Cl. at 440 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486

U.S. 800, 818 (1988) (Brennan, J.)), is misplaced and should not divert this Court from the proper exercise of its authority.[5]

## II. Because the complaint alleges the existence of a binding contract that the Government breached, it states a claim upon which relief can be granted.

As discussed above, Mr. Trudeau has alleged the existence of a binding contract that the Government has breached. The Agreement was conditioned on the fact that Mr. Trudeau was not found guilty of wrongdoing but, in contravention of the plain terms of the Agreement, the FTC Press Release implicitly characterizes the settlement as constituting such a finding.

Ironically, the Press Release does not withstand scrutiny under the FTC's own standards and rules for advertising. As explained in the FTC's *Deception Policy Statement*, an ad is deceptive if it contains a statement—or omits information—that is likely to mislead consumers acting reasonably under the circumstances and is "material" or important to a consumer's decision to buy or use the product. *See FTC Policy Statement on Deception*, appended to *Cliffdale Associates, Inc.*, 103 F.T.C. 110, 174 (1984). A statement also may be deceptive if the publisher does not have a reasonable basis to support the claim. *See FTC Policy Statement on Advertising Substantiation*, appended to *Thompson Medical Co.*, 104 F.T.C. 648, 839 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986).

Moreover, a covenant of good faith and fair dealing inheres in every government contract. *See Asco-Falcon II Shipping Co. v. United States*, 18 Cl. Ct. 484, 491 (1989); *see also Pratt v. United States*, 50 Fed. Cl. 469, 476 (2001) (citing *Maxima Corp v. United States*, 847 F.2d 1549, 1556-57 (Fed. Cir. 1988)). Although "[t]he obligation . . . 'must attach to a specific,

---

[5] The D.C. Circuit also has said that allowing breach of contract actions against the United States to be maintained in the district courts where statutes other than the Tucker Act are involved "would create such inroads into the restrictions of the Tucker Act that it would ultimately result in the demise of the Court of [Federal] Claims" and "would seriously undermine the purposes of the Tucker Act." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).

substantive obligation, mutually assented to by the parties,'" *Franklin Savings Corporation v. United States*, 56 Fed. Cl. 720, 743 (2003), *aff'd*, 97 Fed. Appx. 331 (Fed. Cir. 2004) (citing *Alaska v. United States*, 35 Fed. Cl. 685, 704 (1996), *aff'd*, 119 F.3d 16 (Fed. Cir. 1997)); *see also Detroit Housing Corp. v. United States*, 55 Fed. Cl. 410, 417 (2003), the obligation in this case does precisely that. As discussed above, the Government executed an Agreement stating that "[Mr. Trudeau] … expressly den[ies] any wrongdoing or liability for any matters alleged in the [FTC's] Complaint and the civil contempt action." The Government further agreed that, with the exception of a collateral civil contempt action, "[t]here have been no findings or admissions of wrongdoing or liability by [Kevin Trudeau]." The Government breached these contractual provisions in flagrant disregard of the Agreement, and thus also breached its obligation of good faith and fair dealing.

The FTC's bad faith is further apparent from the fact that even after it was notified of the harm the Press Release was causing Mr. Trudeau, the agency refused to remove the Press Release or issue a retraction. *See*, *e.g.*, Restatement (Second) of Contracts § 205 cmt. *d* (1981) ("bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty . . . . A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain").

The complaint alleges all the elements of a breach of contract—the existence of a valid contract between Mr. Trudeau and the United States, an obligation or duty of the United States arising from the contract, a breach of that duty, and damages occasioned thereby. *See San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). The

complaint states a claim upon which relief can be granted because the FTC Press Release breached the agency's duties arising under the Agreement.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Government's motion to dismiss. Additionally, pursuant to RCFC 20(c), plaintiff hereby requests oral argument on the pending motion to dismiss.

Respectfully submitted,

Eric L. Hirschhorn (member of the bar)
Winston & Strawn LLP
1700 K Street, NW
Washington, D.C. 20006
202-282-5000 (fax 202-282-5100)

Kimball R. Anderson (member of the bar)
Stephen P. Durchslag*
Ronald Rothstein (member of the bar)
Lisa K. Seilheimer (member of the bar)
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601
312-558-5600 (fax 312-558-5700)

David J. Bradford*
Daniel J. Hurtado*
Jenner & Block LLP
One IBM Plaza
Chicago, Illinois 60601
312-222-9350 (fax 312-527-0484)

*Attorneys for Plaintiff*

*application to the Court of Federal Claims bar pending

May 31, 2005