No. 05-263C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

KEVIN TRUDEAU,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, D.C. 20530
Telephone: (202) 514-4325
Facsimile: (202) 514-7965

Attorneys for Defendant

OF COUNSEL:

WILLIAM BLUMENTHAL
General Counsel

JOHN F. DALY
Deputy General Counsel
For Litigation

LAWRENCE DeMILLE-WAGMAN
Attorney
Federal Trade Commission
Washington, D.C. 20850
Telephone: (202) 326-2448

June 17, 2005

# TABLE OF CONTENTS

Page

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . 1

I. This Court Lacks Subject Matter Jurisdiction . . . . 1

A. The Court Lacks Jurisdiction Because Mr. Trudeau's Claim Is Founded Upon A Purported Contract Made By The United States In Its Sovereign Capacity . . . . . . . . . . . 1

1. The _Kania_ Doctrine Is Not Limited To Contracts Related To Criminal Proceedings . . . . . . . . . . . 3

2. The _Kania_ Doctrine Is Not Wrongly-Decided Or Synonymous With The Sovereign Acts Doctrine . . . . . . . . 8

B. The Court Lacks Jurisdiction Because Mr. Trudeau's Claim Is Founded Upon An Alleged Contract Over Which A Federal District Court Has Retained Jurisdiction To Enforce . . . . . . . . . . . . . . . . . . 10

II. Mr. Trudeau's Complaint Fails To State A Claim Upon Which Relief Can Be Granted . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

Page(s)

Allemnore Community Hospital v. United States,
32 Fed. Cl. 608 (1995) . . . . . . . . . . . . . . . . . . . . . 8-9

Amin v. Merit Systems Protection Board,
951 F.2d 1247 (Fed. Cir. 1991) . . . . . . . . . . . . . 11, 12

Awad v. United States,
61 Fed. Cl. 281 (2004) . . . . . . . . . . . . . . . . . . 2, 10

Bobula v. United States Department of Justice,
970 F.2d 854 (Fed. Cir. 1992) . . . . . . . . . . . . . 11, 12

Brown v. United States,
389 F.3d 1296 (D.C. Cir. 2004) . . . . . . . . . . . . . . . 14

Co-Steel Raritan, Inc. v. International Trade Com'n.,
357 F.3d 1294 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . 7

Cygnus Telecomm. Technology v. Totalaxcess.com,
345 F.3d 1372 (Fed. Cir. 2003) . . . . . . . . . . . . . . . 16

Doe v. United States,
37 Fed. Cl. 74 (1996) . . . . . . . . . . . . . . . . . . . . . 2

Houston v. United States,
60 Fed. Cl. 507 (2000) . . . . . . . . . . . . . . . . . . . . . 2

Kania v. United States,
227 Ct. Ct. 650 F.2d 264,
cert. denied, 454 U.S. 895 (1981) . . . . . . . . . . passim

Kokkonen v. Guardian Life Insurance Company of America,
511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . 16

Massie v. United States,
166 F.3d 1184 (Fed. Cir. 1999) . . . . . . . . . . . . 10-14

Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,
723 F.2d 1566 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . 7

TABLE OF AUTHORITIES (Contd.)

CASES

Page(s)

Reed by and Through Reed v. United States,
891 F.2d 878 (11th Cir. 1990) . . . . . . . . . . . . . . . 10

Sanders v. United States, ,
252 F.3d 1329 (Fed. Cir. 2001) . . . . . . . . . . 3, 5-8, 16

South Corp. v. United States,
690 F.2d 1368 (Fed. Cir. 1982) (en banc) . . . . . . . . . . 7

Town of North Bonneville, Wash. v. United States,
5 Cl. Ct. 312 (1984), aff'd in part
and rev'd in part, 833 F.2d 1024 (Fed. Cir. 1987),
cert. denied, 485 U.S. 1007 (1988) . . . . . . . . . . . . . 2

United States v. Winstar Corp.,
518 U.S. 839 (1996) . . . . . . . . . . . . . . . . . . . . 8

United States v. Zajanckauskas,
346 F. Supp. 251 (D. Mass. 2003) . . . . . . . . . . . 3, 5-8

Yankee Atomic Electric Co. v. United States,
112 F.3d 1569 (Fed. Cir. 1997),
cert. denied, 524 U.S. 951 (1998) . . . . . . . . . . . . . 9

STATUTES

10 U.S.C. § 2733 . . . . . . . . . . . . . . . . . . . . . . 11

15 U.S.C. § 53(b) . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1346(a)(2) . . . . . . . . . . . . . . . . . . . 15

RCFC 12(b)(1) & 12(b) (6) . . . . . . . . . . . . . . . . . . 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KEVIN TRUDEAU, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-263C (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully submits the following reply to plaintiff Kevin Trudeau's opposition to defendant's motion to dismiss, dated April 28, 2005. For the reasons explained in our initial motion and below, plaintiff's complaint should be dismissed for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.

I. The Court Lacks Subject Matter Jurisdiction

A. The Court Lacks Jurisdiction Because Mr. Trudeau's Claim Is Founded Upon A Purported Contract Made By The United States In Its Sovereign Capacity

In our initial brief, we demonstrated that the Court lacks subject matter jurisdiction because the "contract" upon which Mr. Trudeau bases his claim - i.e., the Stipulated Order entered by Judge Gettleman in the Coral Calcium suit - was executed by the Government in its sovereign capacity, and does not unmistakably

subject the United States to damages for breach. We established that this type of "sovereign contract" falls outside the Tucker Act's waiver of sovereign immunity for claims founded upon express contracts with the United States. See Kania v. United States, 227 Ct. Cl. 458, 650 F.2d 264, 268, cert. denied, 454 U.S. 895 (1981). Under Kania, jurisdiction is lacking if the Government was acting in its sovereign, as opposed to "proprietary", capacity when it entered into the agreement. See, e.g., Awad v. United States, 61 Fed. Cl. 281, 284 (2004).[1]

In his opposition, Mr. Trudeau does not squarely dispute these points. He does not disagree that the FTC's purpose when it initiated, litigated, and later settled the civil enforcement action against him was to protect the public by ensuring, through the remedies afforded by the Federal Trade Commission Act, that advertising conveys truthful information to the public. Mr. Trudeau also does not dispute that the FTC received nothing in exchange for its agreement to settle, other than the assurance that it had enforced the law that Congress entrusted to it, and had secured the remedies that Congress deemed sufficient to protect the public against the dangers of false advertising.

---

[1] See also Houston v. United States, 60 Fed. Cl. 507, 510-11 (2000); Doe v. United States, 37 Fed. Cl. 74, 77 (1996); Town of North Bonneville, Wash. v. United States, 5 Cl. Ct. 312, 320 (1984), aff'd in part and rev'd in part, 833 F.2d 1024 (Fed. Cir. 1987), cert. denied, 485 U.S. 1007 (1988).

By his silence, Mr. Trudeau effectively concedes that the FTC's enforcement efforts against him, in and for the public interest, were sovereign in nature. Instead of disputing these points, Mr. Trudeau argues that Kania is either wrongly-decided or inapplicable to this case for a host of reasons. None of these arguments hold merit.

1. The Kania Doctrine Is Not Limited To Contracts Related To Criminal Proceedings

Mr. Trudeau's principal argument is that Kania's holding is limited to contracts that arise "in the criminal context," a circumstance not present here. Pl. Br. 16-17. The precise nature of this argument is not clear, however. At points in his brief, Mr. Trudeau appears to contend that Kania's holding is based upon a "civil/criminal" distinction, rather than the "sovereign/proprietor" distinction described above. Pl. Br. 16-17. At other points, Mr. Trudeau maintains that the decision of the United States Court of Appeals for the Federal Circuit in Sanders v. United States, 252 F.3d 1329 (Fed. Cir. 2001), "significantly recast" the "sovereign/proprietor distinction in Kania as a distinction between civil and criminal contracts to which the United States is a party." Pl. Br. 20 (quoting United States v. Zajanckauskas, 346 F. Supp. 251, 257 (D. Mass. 2003)).

In either case, Mr. Trudeau's attempt to limit Kania's holding to the criminal context is without support or merit. Mr. Trudeau correctly notes that Kania involved a contract related to

a criminal matter – i.e., an agreement by the United States not to prosecute Mr. Kania in exchange for his testimony before a grand jury. Beyond that circumstance, however, the Court did not draw a "civil/criminal" distinction in deciding whether the Tucker Act waived sovereign immunity for Mr. Kania's claim, nor did it focus solely upon the criminal context of the case.

Rather, the Court of Claims began its analysis of the jurisdictional issue with the oft-quoted statement that:

> The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves. . . .

Kania, 650 F.2d at 268. As support for this statement, the Court cited examples of sovereign obligations – e.g., public employment, military pay, contracts for disaster relief – that had long been held to fall outside the "consent in the Tucker Act to suits on contracts". Id. The Court explained that, although it was possible for such arrangements, which were wholly civil in character, to fall within the Tucker Act's contract jurisdiction, the agreement must contain an express, authorized promise by the Government to pay money damages in case of breach. Id.

The Court then applied this rationale to an agreement made in the criminal context:

> By the same line of reasoning, we would deem it possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement or one to grant immunity for giving testimony, or to protect a witness. But, in such case, the court would look for specific authority in the AUSA to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined.

Id. The Court added that, in the criminal context, the need for specificity was "the greater" because the "role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court." Id.

In this light, the Kania Court plainly did not limit its holding to the criminal context. To the contrary, the Court explained that rationale applied in the case originated in civil matters and, "[b]y the same line of reasoning," the Court extended that rationale to a criminal context. Merely because the Court regarded the need for specificity to be "greater" in the criminal context does not mean that the requirement is wholly inapplicable in the civil context, as Mr. Trudeau contends.

Alternatively, Mr. Trudeau argues that, even if Kania was originally premised upon a sovereign/proprietary distinction, the Federal Circuit's decision in Sanders "significantly recast"

Kania's holding and "made clear that a 'sovereign capacity' defense is available only in the criminal context." Pl. Br. 17, 19-20. As support for this novel proposition, Mr. Trudeau relies exclusively upon United States v. Zajanckauskas, 346 F. Supp. 251 (D. Mass. 2003), a case which, based upon a poorly-reasoned analysis of Sanders, held that the "sovereign/proprietor distinction relied upon so heavily by the Court in Kania seems to have lost its force in the intervening years. It now appears that the criminal/civil distinction has become de riqueur." 346 F. Supp. at 256-57.

Although it supports Mr. Trudeau's position, the Zajanckauskas decision, which of course is not controlling authority, is wrongly-decided and should not guide this Court's decision for several salient reasons.

First, Zajanckauskas placed dubious weight on the fact that the Sanders decision "conspicuously" failed to mention a particular sentence from the Kania decision associated with the "sovereign/proprietor rationale".[2] Such an omission, however, provides no conceivable basis to conclude that Sanders "significantly recast" Kania's holding. The court in

[2] The referenced sentence is the Court's statement that "Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves. . . ." Kania, 650 F.2d at 268.

Zajanckauskas apparently did not understand that decisions of the Court of Claims are binding precedent in this Circuit. South Corp. v. United States, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc). Thus, if the Sanders Court intended to recast Kania's holding (and two decades of ensuing case law), it would not have done so silently, but would have considered the matter in en banc proceedings, and addressed the issue expressly. See Mother's Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1573 (Fed. Cir. 1983).

Second, Zajanckauskas also mistakenly stated that the Sanders decision "characterized [Kania] as premised on the criminal/civil distinction." 346 F. Supp. at 256-57. The Sanders decision contains no such statement, however. Rather, the Court cited Kania for the unremarkable proposition that, where an agreement is "entirely concerned with the conduct of the parties in a criminal case," a damages remedy is "not ordinarily available." 252 F.3d at 1334-35. This is a correct statement of the law, and does not recast Kania's holding in any manner.[3]

---

[3] In any event, because the agreements in both Kania and Sanders were "entirely concerned with the conduct of the parties in a criminal case," it would have been unnecessary (and illogical) for the Sanders Court to recast Kania's holding. Thus, even if the decision in Sanders contained language extinguishing the distinction between sovereign and proprietary contracts, which it did not, its statements would have been mere dicta, not binding precedent. See Co-Steel Raritan, Inc. v. International Trade Com'n., 357 F.3d 1294, 1307 (Fed. Cir. 2004).

Finally, Zajanckauskas erroneously found support for its conclusion in United States v. Winstar Corp., 518 U.S. 839 (1996). The court noted that the Supreme Court in Winstar "failed to take issue with" the exercise of Tucker Act jurisdiction, even though the United States "presumably" entered into the alleged contract its sovereign capacity. Zajanckauskas, 346 F. Supp. at 257. Contrary to the court's presumption, however, the Supreme Court did not view the United States as having made the alleged contract in its sovereign capacity. See Winstar, 518 U.S. at 887 (the "Government agreed to do something that did not implicate its sovereign powers at all, that is, to indemnify its contracting partners against financial losses arising from regulatory change."). Moreover, Winstar did not involve a question of jurisdiction but, rather, dealt with whether the United States was contractually bound to maintain certain regulatory capital requirements. This case involves a very different situation.

2. The Kania Doctrine Is Not Wrongly-Decided Or Synonymous With The Sovereign Acts Doctrine

Mr. Trudeau's remaining arguments regarding Kania can be quickly dismissed. In his broadest challenge, Mr. Trudeau simply contends that Kania and its progeny are wrongly-decided. See Pl. Br. 21 (characterizing the "Kania line of cases" as "unwarranted and erroneous"). Clearly, this Court is not in a position to address such a claim. See Allemnore Community Hospital v. United

States, 32 Fed. Cl. 608, 608-09 (1995) (holding that "it would be highly adventurous and lacking in appropriate respect for orderly proceedings in our judicial system, for this court to advise the Federal Circuit on whether one of its panels erred.").

Similarly deficient is Mr. Trudeau's assertion that we have improperly "conflated" the Kania rule with the so-called "sovereign acts doctrine." Pl. Br. 12. Contrary to Mr. Trudeau's assertions, our motion to dismiss does not assert the sovereign acts doctrine, as that doctrine does not apply to the jurisdictional issue presented in our motion, i.e., whether this Court's Tucker Act jurisdiction excludes agreements that the United States enters to effectuate its sovereign obligations.

Rather, the sovereign acts doctrine is a merits-based defense that addresses situations in which a Governmental agency enters into a contract and then, through legislation or executive agency actions, interferes with performance of that contract. See Yankee Atomic Electric Co. v. United States, 112 F.3d 1569, 1574-75 (Fed. Cir. 1997), cert. denied, 524 U.S. 951 (1998). Under the doctrine, the Government is not deemed to have breached the existing contract if the legislative or executive branch actions involve "public and general acts" rather than acts narrowly directed at abrogating specific contract rights. Id. In contrast, the Kania doctrine is a jurisdictional defense that deals with the manner in which the contract was made, not the

manner in which it was allegedly breached.

Accordingly, for these reasons and the reasons stated in our initial brief, the complaint should thus be dismissed because this case does not meet the limited exception to the general rule regarding the Court's lack of jurisdiction over claims based upon contracts executed by the United States in its sovereign capacity. See Kania, 650 F.2d at 264; Awad, 61 Fed. Cl. at 285.

B. The Court Lacks Jurisdiction Because Mr. Trudeau's Claim Is Founded Upon An Alleged Contract Over Which A Federal District Court Has Retained Jurisdiction To Enforce

As a second jurisdictional defense, our initial brief demonstrated that this Court lacks jurisdiction to entertain breach-of-contract claims founded upon settlement agreements where the agreement arises from litigation committed to another forum, and that forum's jurisdiction "'includes the power to enforce a settlement resulting from the claim that provided the basis for jurisdiction.'" Massie v. United States, 166 F.3d 1184, 1188 (Fed. Cir. 1999) (quoting Reed by and Through Reed v. United States, 891 F.2d 878, 880 (11th Cir. 1990)).

Here, the district court in the Coral Calcium suit has expressly retained jurisdiction to enforce the Stipulated Order upon which Mr. Trudeau bases his claim. Thus, whatever remedies Mr. Trudeau may possess for the FTC's alleged violation of the stipulated order must be pursued, if at all, in that court.

In his opposition, Mr. Trudeau does not dispute these points clearly, if at all. Rather, Mr. Trudeau makes two strained arguments, neither of which warrant denial of our motion.

First, Mr. Trudeau contends that this case is factually analogous to Massie, a case in which jurisdiction was held to exist. Pl. Br. 22-23. The facts in this case and Massie are materially different, however, and warrant a different result.

Massie involved a claim for medical malpractice submitted to the Department of the Navy pursuant to the Military Claims Act ("MCA"), 10 U.S.C. § 2733. The Navy agreed to pay the Massies' claim by purchasing an annuity contract from a highly-rated insurance company, which in turn would make intermittent cash payments to the Massies upon specified terms. Massie, 166 F.3d at 1187. Subsequently, the insurance company failed to make the required payments, and the Massies sued the Navy for breach of contract in this Court. Id.

The Government challenged Tucker Act jurisdiction upon the ground that, under principles applied in cases such as Amin v. Merit Systems Protection Board, 951 F.2d 1247 (Fed. Cir. 1991), and Bobula v. United States Department of Justice, 970 F.2d 854 (Fed. Cir. 1992), this Court lacked jurisdiction "over actions for breach of settlement agreements when the agreements ar[i]se from disputes which would have been litigated in other fora."

Massie, 166 F.3d at 1188.[4]

The Federal Circuit rejected the Government's arguments and held that this Court properly assumed jurisdiction for three reasons. The Court first stated that the principle applied in Amin and Bobula did not apply to the MCA context because "[a]n agreement to pay an MCA claim is more akin to a procurement contract than a settlement agreement." 166 F.3d at 1188. Second, the Court stated that the MCA agreement "fits the classic definition of an express contract" and emphasized that it "contains no clause requiring the Secretary to finally and conclusively adjudicate disputes arising from it." Id. Finally, the Court added that, unlike Amin and Bobula, disposition of the Massies' contract claim would not require "review of subject matter reserved to another body." Massie, 166 F.3d at 1188.

These facts are a far cry from the situation presented in this case. Unlike the agreement in Massie, the Stipulated Order in this case can not by any stretch of the imagination be regarded as "more akin to a procurement contract than a settlement agreement." 166 F.3d at 1188. As we showed in our initial brief, by agreeing to the Stipulated Order, the FTC plainly did not engage to purchase or sell goods and services, as

[4] The Government also argued that Tucker Act jurisdiction was impliedly withdrawn because Congress enacted the MCA as a "complete and comprehensive statutory scheme" pertaining to the payment of military claims. Massie, 166 F.3d at 1188. The Court rejected this argument because "the MCA does not address the breach of agreements to pay MCA claims." Id.

it would in a procurement contract. The FTC received nothing in exchange for its agreement to settle, other than the assurance that it had enforced the law that Congress entrusted to it. In contrast, the Government in Massie contracted to do something that was akin to a procurement and that did not implicate its sovereign powers at all – it agreed to purchase an insurance annuity for the Massies' benefit.[5]

More significantly, unlike this case, the agreement in Massie did not contain a provision providing that a court or administrative official retained jurisdiction to enforce the agreement. This omission was a material basis for the Court's jurisdictional holding. See Massie, 166 F.3d at 1188 (emphasizing that the agreement "contains no clause requiring the Secretary to finally and conclusively adjudicate disputes arising from it."). In stark contrast, the "agreement" in this case expressly provided that the district court retained jurisdiction

[5] As further support for its conclusion that the MCA agreement was "more akin to a procurement contract than a settlement agreement," the Court also noted that a "settlement" agreement "arises when a claimant relinquishes its right to litigate its claim." Massie, 166 F.3d at 1188. Because MCA administrative scheme did not give the Massies the right to litigate, the Court held that they could not "enter into a settlement agreement, as the term is traditionally understood." Id. Mr. Trudeau's situation is quite different, as he could, and did, relinquish his right to litigate the Coral Calcium suit.

to interpret, enforce, and modify the order:

> **RETENTION OF JURISDICTION**
>
> **XXI.**
>
> **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Order.

Compl., Exh. A at 29.

Finally, the Massie Court's third concern – i.e., whether disposition of the contract claim would require "review of subject matter reserved to another body," 166 F.3d at 1188 – further supports a rejection of jurisdiction in this case. In his complaint, Mr. Trudeau asks this Court to interpret and enforce the Stipulated Order by imposing certain implied duties upon the FTC. Because Judge Gettleman has retained jurisdiction to enforce the Stipulated Order, Mr. Trudeau is very much asking this Court to review a subject matter – the existence and extent of the FTC's alleged violation of the order – that is squarely "reserved to another body." Unlike the situation in Massie, by agreeing to have the district court enforce the Stipulated Order, Mr. Trudeau acknowledged that any remedies for violation of the Stipulated Order must be pursued, if at all, in the court that entered and retained jurisdiction to enforce the order. Accordingly, Mr, Trudeau's reliance upon Massie is misplaced.[6]

---

[6] Similarly inapposite is Mr. Trudeau's citation to a Title VII case, Brown v. United States, 389 F.3d 1296 (D.C. Cir. 2004),

Other than Massie, Mr. Trudeau's only remaining argument is that our position improperly "expands" the district court's jurisdiction in some regard. Specifically, Mr. Trudeau reasons that the district court "can only 'retain' such jurisdiction as it possessed in the first place," and that such jurisdiction is premised upon the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Pl. Br. 23. Because the Little Tucker Act waives sovereign immunity for contract claims against the United States less than $10,000, and because he seeks more than $10,000 in damages, Mr. Trudeau argues that the district court's "retention of jurisdiction over an injunction" can not operate to expand its "breach-of-contract jurisdiction over the Government beyond the limits expressly set by Congress" – i.e., the $10,000 threshold. Pl. Br. 23.

Although Mr. Trudeau's concern for the proper limits of sovereign immunity is noteworthy, his argument nevertheless misconstrues our position. In this case, the district court's jurisdiction is not based upon the Little Tucker Act but, rather, stems from the court's jurisdiction to entertain claimed violations of the FTC Act, as well as its inherent power to enforce a settlement arising from such claims.

---

as being of "like import" to Massie. Pl. Br. 23. As in Massie, there was no indication that the settlement agreement in Brown contained a clause providing that the court that initially heard Ms. Brown's Title VII complaint retained jurisdiction to enforce the settlement that arose from those proceedings.

As shown in our initial brief, Congress vested the Federal district courts with jurisdiction to entertain civil actions brought by the FTC to enjoin violations of sections 5 and 12 of the FTC Act. See 15 U.S.C. § 53(b). Consequently, the district courts not only possess jurisdiction to decide claims founded upon the FTC Act, but also are empowered to enforce settlements arising from such proceedings where the court's consent order incorporates the settlement terms or includes a provision "retaining jurisdiction" for enforcement purposes. See, e.g., Cygnus Telecomm. Technology v. Totalaxcess.com, 345 F.3d 1372, 1374-75 (Fed. Cir. 2003) (citing Kokkonen v. Guardian Life Insurance Company of America, 511 U.S. 375, 378- 81 (1994)).

Here, Mr. Trudeau alleges that the terms of the parties' settlement agreement are embodied in the Stipulated Order. Compl. ¶ 8 & Exh. "A". Moreover, Judge Gettleman has expressly retained jurisdiction to enforce the order. Compl., Exh. A at 29. Due to either circumstance, the district court retained jurisdiction to enforce the Stipulated Order, and Mr. Trudeau does not contend otherwise. The fact that the district court may not award relief in the form of money damages for breach of contract is irrelevant to the separate and distinct issue of the court's indisputable power to enforce the Stipulated Order.

Thus, contrary to Mr. Trudeau's assertion, our position does not expand the district court's jurisdiction beyond what Congress

authorized in the Little Tucker Act. In any event, the Little Tucker Act is not applicable to this case for the same reasons explained above regarding contracts made in the Government's sovereign capacity. See Sanders, 252 F.3d at 1334-35.

For these reasons and the reasons explained in our initial brief, the Court should dismiss Mr. Trudeau's complaint for lack of subject matter jurisdiction.

## II. Mr. Trudeau's Complaint Fails To State A Claim Upon Which Relief Can Be Granted

In addition to our jurisdictional arguments, our initial brief demonstrated that the complaint fails to state a claim upon which relief can be granted. We showed that Mr. Trudeau's sole basis for relief - the "implied covenant of good faith and fair dealing" - does not apply because the district court's Stipulated Order did not impose implied duties upon the FTC and, to the extent it did, no reasonable view of the facts alleged in the complaint can establish that the FTC breached the contract in the manner alleged by Mr. Trudeau.

In this latter regard, we examined the FTC's press release - sentence by sentence - to demonstrate that no reasonable view of its wording could establish that the FTC announced the Stipulated Order as an admission or finding of liability on Mr. Trudeau's part. Indeed, we even pointed out that, based upon materials attached to the complaint, Mr. Trudeau conceded that the press release's disclaimer - i.e., that the Stipulated Order did not

"constitute an admission by the defendants of a law violation" -- was "literally true". Compl., Exh. "C" at 2.

Perhaps due to this concession, Mr. Trudeau's opposition does not address in any detail the actual wording of the press release. Rather, he argues in typically blunderbuss fashion that the complaint states a claim upon which relief can be granted because he has alleged that the FTC breached its implied duties by "implicitly" characterizing the settlement as constituting a finding of wrongdoing. Pl. Br. 24.

We are unaware of any authority holding that the implied duty of good faith and fair dealing can be breached by "implications" flowing from otherwise lawful Government actions, and Mr. Trudeau cites no to none. Rather, the legal theory of his complaint appears to be that the FTC's press release, although literally true, breached the contract because it "does not withstand scrutiny under the FTC's own standards and rules for advertising." Pl. Br. 24. In this regard, Mr. Trudeau notes that, pursuant to FTC enforcement policies against deceptive advertising, "an ad is deceptive if it contains a statement - or omits information - that is likely to mislead consumers acting reasonably under the circumstances and is 'material' or important to a consumers decision to buy or use the product." See also Compl. ¶¶ 13, 35.

Mr. Trudeau's reliance upon FTC "policy statements" as the legal basis for his contract breach claim is fundamentally flawed. There is absolutely no basis, legal or factual, express or implied, upon which this Court could conclude that the parties to the Stipulated Order intended to impose FTC advertising standards (applicable to the sale of food, drugs, and other products) as binding contractual commitments of the FTC under the Stipulated Order. These standards reflect the FTC's enforcement policy respecting deceptive acts or practices in the sale of goods and services, and plainly apply in an entirely different context. See http://www.ftc.gov/bcp/policystmt/ad-decept.htm. As a matter of law, these policy statements can not form the basis of any cause of action against the FTC. For this reason alone, the complaint fails to state a claim upon which relief can be granted.

CONCLUSION

For these reasons and the reasons stated in our initial brief, we respectfully request that the Court grant our motion and dismiss the complaint.

Respectfully submitted,

OF COUNSEL:

WILLIAM BLUMENTHAL
General Counsel

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN F. DALY
Deputy General Counsel
For Litigation

LAWRENCE DeMILLE-WAGMAN
Attorney
Federal Trade Commission
Washington, DC 20850
Tele: (202) 326-2448

s/Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. St., N.W.,
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 514-7969

Attorneys for Defendant

June 17, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June, 2005, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian M. Simkin