ORIGINAL

# In the United States Court of Federal Claims

05-263 C
Filed September 26, 2005
TO BE PUBLISHED

FILED
SEP 2 6 2005
U.S. COURT OF FEDERAL CLAIMS

KEVIN TRUDEAU,

Plaintiff,

v.

UNITED STATES,

Defendant.

Subject matter jurisdiction, breach of contract, stipulated order settling Federal Trade Commission enforcement action, sovereign capacity, proprietary capacity, *Kania*, *Sanders*

Eric L. Hirschhorn, Winston & Strawn, LLP, Washington, D.C., for plaintiff. Kimball R. Anderson, Ronald Rothstein, Stephen P. Durchslag, Lisa K. Seilheimer, Winston & Strawn, Chicago, Illinois; David J. Bradford, Daniel J. Hurtado, Jenner & Block, LLP, Chicago, Illinois, of counsel.

Brian M. Simkin, Assistant Director, David M. Cohen, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C. for defendant. William Blumenthal, General Counsel, John F. Daly, Deputy General Counsel for Litigation, Lawrence DeMille-Wagman, Attorney, Federal Trade Commission, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction or, in the alternative, pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Oral argument was deemed unnecessary. For the reasons set forth below, defendant's motion to dismiss pursuant to RCFC 12(b)(1) is GRANTED.

## BACKGROUND[1]

### I. Nature of the Case

The case arises from a dispute regarding the wording of a press release issued by the Federal Trade Commission ("FTC") to announce the settlement of a civil enforcement action against plaintiff Kevin Trudeau for false advertising in violation of the Federal Trade Commission Act.

At the time the enforcement action was filed, Mr. Trudeau was in the business of selling various self-help and health-related products, principally through radio and television "infomercials," which are relatively long commercials in the format of television programs. *See* WEBSTER'S NEW COLLEGE DICTIONARY 369 (2001). In particular, Mr. Trudeau promoted a dietary supplement named Coral Calcium Supreme, which he advertised would cure cancer, among other diseases. In January 1998, the FTC filed a complaint against Mr. Trudeau in the District Court for the Northern District of Illinois, alleging that this product did not provide the advertised benefits and that Mr. Trudeau had engaged in false and deceptive trade practices. The FTC's suit concluded when the parties reached a settlement agreement, which was embodied in a Stipulated Final Order entered by the District Court for the Northern District of Illinois on September 2, 2004 ("the Stipulated Order"). The Stipulated Order provided the FTC with injunctive relief, including a broad prohibition of the type of infomercial that had led to the enforcement action. In addition, Mr. Trudeau was prohibited from manufacturing, distributing, promoting or offering for sale any products containing coral calcium. However, the Stipulated Order stated:

> Defendants . . . expressly deny any wrongdoing or liability for any of the matters alleged in the Complaint and the civil contempt action. There have been no findings or admissions of wrongdoing or liability by the Defendants . . . other than the finding against Kevin Trudeau for contempt of Part I of the Stipulated Preliminary Injunction, entered by the Court on June 29, 2004.

Compl. Ex. A at 3-4. On September 7, 2004, the FTC issued a press release on its website regarding the settlement with Mr. Trudeau. This press release forms the basis for Mr. Trudeau's claims in this litigation.

In his complaint, Mr. Trudeau characterizes the district court's Stipulated Order as a contract within this Court's Tucker Act jurisdiction. He alleges that the FTC's press release

---

[1] Unless otherwise indicated, the facts set forth in this section are either undisputed or alleged and assumed to be true for the purposes of the defendant's motion.

breached the contract's implied covenant of good faith and fair dealing because it announced that the settlement constituted an admission of wrongdoing by Mr. Trudeau, thereby depriving Mr. Trudeau of the benefits of the agreement. *See* Compl. ¶ 2. Mr. Trudeau seeks an unspecified amount of money damages for business injuries resulting from the alleged breach of the Stipulated Order.

The United States moved to dismiss Mr. Trudeau's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). Defendant argued that "the Stipulated Order, if contractual at all, was entered into by the United States in its sovereign capacity[2], and thus, falls outside this Court's limited Tucker Act jurisdiction." Def. Br. at 3. Additionally, the Government argued that the "Court lacks jurisdiction because the district court has expressly retained jurisdiction to enforce the Stipulated Order upon which Mr. Trudeau bases his claim." *Id.* Alternatively, the Government contended that Mr. Trudeau had failed to state a claim upon which relief can be granted because the Stipulated Order did not impose any implied duties upon the FTC and, even if it did, no reasonable view of the facts alleged in the complaint could establish that the FTC breached the contract in the manner alleged by Mr. Trudeau. *Id.* at 4.

## II. Statutory and Regulatory Background

The FTC is an independent agency of the United States created by the Federal Trade Commission Act ("FTC Act" or "Act"), 15 U.S.C. §§ 41-58 (2000). Among other responsibilities, the FTC enforces sections 5 and 12 of the FTC Act. Section 5(a) declares unlawful "unfair or deceptive acts or practices in or affecting commerce" and empowers the Commission to prevent such acts or practices. 15 U.S.C. § 45(a)(1), (2). Section 12 prohibits the dissemination of "any false advertisement" in order to induce the purchase of "food, drugs, devices, or cosmetics." 15 U.S.C. § 52(a)(2). The Act defines "false advertisement" as "an advertisement, other than labeling, which is misleading in a material respect." 15 U.S.C. § 55.

A false advertisement under section 12 constitutes an unfair or deceptive act or practice within the meaning of section 5. 15 U.S.C. § 52(b). False advertising is also made a criminal offense if committed in connection with the sale of injurious products or "with intent to defraud

---

[2] The sovereign capacity doctrine is distinct from the sovereign acts doctrine. The sovereign capacity doctrine provides that the United States Court of Federal Claims lacks jurisdiction over certain contracts that the Government makes in its sovereign capacity. *Kania v. United States*, 227 Ct. Cl. 458, 464, 650 F.2d 264, 267-68 (1981). In contrast, the sovereign acts doctrine is a merits-based affirmative defense under which the United States, when sued as a party to a contract, "cannot be held liable for an obstruction to the performance of the particular contract resulting from its public and general acts as a sovereign." *Allegre Villa v. United States*, 60 Fed. Cl. 11, 16 (2004)(quoting *Horowitz v. United States*, 267 U.S. 458, 461 (1925)). The Government's motion to dismiss "does not assert the sovereign acts doctrine." Def. Reply at 9.

or mislead," and is punishable by a fine of not more than $5,000 and imprisonment for not more than six months. 15 U.S.C. § 54.

The Act authorizes the FTC, through its own attorneys and/or the Attorney General, to initiate civil actions in federal district court to enjoin violations of the FTC Act. *See* 15 U.S.C. §§ 53(b), 56(a). In such cases, the district court's authority to issue injunctive relief carries with it the full range of equitable remedies, including consumer redress and disgorgement of profits. *See FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 468-70 (11th. Cir. 1996).

## III. Statement of Facts

### A. The FTC's Enforcement Efforts Against Mr. Trudeau

For several years, the FTC sought relief against Mr. Trudeau, alleging that his infomercials misled consumers about cures for serious diseases, such as cancer and multiple sclerosis, as well as common conditions, such as hair loss and obesity. The Stipulated Order resolved two cases that the FTC had filed against Mr. Trudeau dating back to 1998. Specifically, in 1998, and again in 2003, the FTC filed actions against Mr. Trudeau and other defendants in the United States District Court for the Northern District of Illinois, alleging that the marketing of various specified products violated sections 5 and 12 of the FTC Act. Compl. ¶ 7; *FTC v. Trudeau*, No. 98-0168 (N.D. Ill.) (Filed Jan. 12, 1998); *FTC v. Trudeau, et al.*, No. 03-3904 (N.D. Ill.) (Filed June 9, 2003). In the 2003 suit, the FTC alleged that Mr. Trudeau violated the FTC Act by falsely claiming that one product, a dietary supplement named Coral Calcium Supreme, could cure cancer, multiple sclerosis, lupus, heart disease, high blood pressure, and other diseases. Compl., Ex. B.

In connection with both actions, which were consolidated, the FTC sought injunctive relief and redress for consumers. The FTC also sought preliminary relief and, in July 2003, the court entered a stipulated preliminary injunction that prohibited Mr. Trudeau from making any of the claims for Coral Calcium Supreme that the FTC had challenged. Compl., Ex. A at 2; Ex. B at 1. Despite the preliminary injunction, Mr. Trudeau continued making the challenged claims with respect to Coral Calcium Supreme and, on June 29, 2004, the Honorable Robert W. Gettleman of the United States District Court for the Northern District of Illinois found Mr. Trudeau in civil contempt for violating the preliminary injunction by continuing to advertise Coral Calcium Supreme as an effective cure for cancer. Compl., Ex. A at 2; Ex. B at 1.

### B. The Stipulated Order

Two months later, the parties entered into a settlement agreement, which was embodied in the Stipulated Order issued by Judge Gettleman on September 2, 2004. Compl., Ex. A. The Stipulated Order resolved (1) the FTC's attempt to have Mr. Trudeau held in contempt of the 1998 Order; (2) the FTC's request for additional remedial measures in connection with Mr.

Trudeau's failure to comply with the preliminary injunction; and (3) the FTC's 2003 complaint. Compl., Ex. A at 2.

In the Stipulated Order, Mr. Trudeau agreed to a permanent injunction that essentially granted the FTC all the equitable relief it sought, including a broad prohibition of the type of infomercial that had led to the lawsuits. *Id.* at 7-10. Among other things, the Stipulated Order prohibited Mr. Trudeau "from producing, disseminating, making or assisting others in making any representation in an infomercial aired or played on any television or radio media . . . ." Compl., Ex. A at 8. The Stipulated Order contained a limited exception to the prohibition, specifying that:

> This . . . does not prohibit Defendants from making any representation in any television or radio media in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any book, newsletter or other informal publication in any format *provided* that such book, newsletter or other informal publication: 1) does not reference, directly or indirectly, any branded or trademarked product, program or service that Defendants are promoting; 2) is not, directly or indirectly, an advertisement for any product, program or service; and 3) is not sold, promoted, or marketed, directly or indirectly, with any product, program, or service that is related to the content of the book, newsletter, informal publication or infomercial.

*Id.*

The Stipulated Order also prohibited Mr. Trudeau "from manufacturing, labeling, advertising, promoting, offering for sale, sale, or distribution of any product containing coral calcium . . . ," or from making any representation regarding benefits, performance, or efficacy of any product, program or service unless such representation was true and not misleading. *Id.* at 10-11. Moreover, the Stipulated Order reflected Mr. Trudeau's agreement to pay "equitable monetary relief" in the amount of $2 million, which relief included, but was not limited to, "consumer redress." *Id.* at 16. Finally, the Stipulated Order also provided that the United States District Court for the Northern District of Illinois retained jurisdiction to interpret, enforce, and modify the order. Compl., Ex. A at 29.

C. <u>The FTC Press Release</u>

On September 7, 2004, the FTC issued a press release announcing the settlement, which was posted on the agency's website. Compl. ¶ 10 & Ex. B. The release is headed "Kevin Trudeau Banned from Infomercials," with a subheading "Trudeau Settles Claims in Connection with Coral Calcium Supreme and Biotape." *Id.*, Ex. B at 1. The first paragraph explains that, pursuant to the settlement, Mr. Trudeau is broadly banned from appearing in, producing, or disseminating future infomercials that advertise any type of product, service, or program to the public, except for truthful infomercials for informational publications. *Id.* It also states that he

"agreed" to these prohibitions and to pay $2,000,000 to "settle" the charges the FTC had brought. *Id.* The next paragraph explains the manner in which Mr. Trudeau would satisfy the monetary judgment. *Id.* The third paragraph quotes the Acting Director of the FTC's Bureau of Consumer Protection, Lydia Parnes, as stating: "This ban is meant to shut down an infomercial empire that has misled American consumers for years." *Id.* Ms. Parnes also stated: "Other habitual false advertisers should take a lesson; mend your ways or face serious consequences." *Id.*

The fourth paragraph detailed what the FTC "alleged," and was followed by a paragraph describing what the court "found" regarding Mr. Trudeau's contempt of the 2003 preliminary injunction. *Id.* The sixth and seventh paragraphs provided additional detail regarding the terms of "the settlement announced today." *Id.* Finally, the press release closed with the following statement:

> NOTE: This stipulated final order is for settlement purposes only and does not constitute an admission by the defendants of a law violation. A stipulated final order has the force of law when signed by the judge.

*Id.* at 2.

D. Mr. Trudeau's Complaints Regarding the Press Release

On February 16, 2005, Mr. Trudeau requested that the FTC withdraw the press release from its website and issue a corrective retraction. Compl. ¶ 27 & Ex. C. Mr. Trudeau asserted that the press release indicated that the district court had found him liable for wrongdoing, when in fact the Stipulated Order stated that there had been no findings or admissions of liability on his part. *Id.* For this reason, Mr. Trudeau asserted that the press release "effectively deprived [him] of the bargained-for benefits" of the settlement agreement embodied in the Stipulated Order. Compl. ¶ 2. The FTC denied Mr. Trudeau's request by letter dated February 22, 2005, citing the statement in the press release that the Stipulated Order was for settlement purposes only and that Mr. Trudeau's settlement did not constitute an admission of a violation of law. Compl. ¶ 28 & Ex. D.

Mr. Trudeau now seeks judicial relief. He does not press his claim, however, in the United States District Court for the Northern District of Illinois, which was the court that entered and retained jurisdiction to enforce the Stipulated Order. Instead, on February 28, 2005, Mr. Trudeau filed his complaint in this Court. At the same time, he filed a complaint in the United States District Court for the District of Columbia seeking relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, et seq. ("APA").

In his APA suit, Mr. Trudeau sought declaratory and injunctive relief namely, the rewording of the press release. On August 25, 2005, the United States District Court for the District of Columbia granted the FTC's motion to dismiss Mr. Trudeau's complaint on the ground that the court was without jurisdiction to review his claims. *Trudeau v. FTC*, No. 05-

0400, ___ F. Supp.2d ___, ___, 2005 WL 2037360 at *7 (D. D.C. August 25, 2005). Specifically, the district court held that it lacked jurisdiction over Mr. Trudeau's APA claim because the press release at issue was not a "final agency action" under section 704 of the APA. *Id.* at ___, *8. In the alternative, the court concluded that Mr. Trudeau's claims a First Amendment retaliation claim and a claim that the FTC had exceeded its authority to issue press releases under 15 U.S.C. § 46(f) – should be dismissed for failure to state a claim upon which relief can be granted. *Id.* at ___, ___, *7, *12-14.

Mr. Trudeau argues that because the claim pending before this Court is based on a contract rather than the APA and seeks money damages rather than injunctive relief, the district court's jurisdictional holding "is hardly . . . authoritative." Pl.'s Resp. To Def.'s Notice of Additional Auth. at 3. He also contends that the district court's statement that "[f]airly read, the press release is not inaccurate or misleading at all," ___ F. Supp.2d at ___, 2005 WL 2037360 at *10, "is dictum" and "does not bind this Court." Pl.'s Resp. To Def.'s Notice of Additional Auth. at 2 n.2.

In his case before this Court, Mr. Trudeau characterizes the Stipulated Order as a "contract" within this Court's Tucker Act jurisdiction. He alleges that the FTC's press release "breached" the Stipulated Order, and he seeks an unspecified amount of money damages for injuries to his business resulting from the alleged breach. Specifically, Mr. Trudeau alleges that the press release and resulting articles have created a public perception that he is a "habitual false advertiser," which has adversely affected sales of his books and publications. Compl. ¶ 26.

## DISCUSSION

### I. Standard of Review on Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court must address the issue of subject matter jurisdiction before any others, *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994), and it must dismiss a complaint "when it lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). However, when this court hears such a jurisdictional challenge, "its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)(overruled, on other grounds, by *Davis v. Scherer*, 468 U.S. 183 (1984)). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

The court must accept as true the facts alleged in the complaint, and must construe such facts in the light most favorable to the pleader. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (holding that courts are obligated "to draw all reasonable inferences in plaintiff's favor"); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). "If, however, the motion challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider relevant evidence in order to resolve the factual dispute." *McDonald v.*

*United States*, 37 Fed. Cl. 110, 113 (1997); *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ( "Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged." ). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds*, 846 F.2d at 748; *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("If [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.").

## II. The Government Was Acting in Its Sovereign Capacity When It Agreed to Entry of the Stipulated Order in Connection With the Settlement of the FTC Action

This Court's subject matter jurisdiction under the Tucker Act extends to "claims against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491 (2000). The Tucker Act, however, merely confers jurisdiction on this court, "it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398-99 (1976)).

"The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of the minds." *Kania v. United States*, 227 Ct. Cl. 458, 464, 650 F.2d 264, 268 (1981). The jurisdiction of the Court of Federal Claims does not extend to contracts entered into by the Government in its sovereign capacity that do not unmistakably subject the United States to damages in the event of breach. *Id.* at 464-65, 268, *see also Silva v. United States*, 51 Fed. Cl. 374, 377, *aff'd*, 51 Fed. Appx. 12 (Fed. Cir. 2002) (unpub.). In *Awad v. United States*, the Court of Federal Claims explained that:

> [t]he two main categories of contracts that the government makes are often referred to as proprietary and sovereign. *See Doe v. United States*, 37 Fed. Cl. 74, 77 (1996). The United States generally has waived sovereign immunity with regard to proprietary contracts, which are contracts in which "the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." *Kania*, [227 Ct. Cl. at 464,] 650 F.2d at 268; *see also Bloemker v. United States*, 229 Ct. Cl. 690, 692-93 (1981). In contrast, the government has not waived sovereign immunity for contracts that it makes in its sovereign, or governmental capacity. *See Kania*, [227 Ct. Cl. at 464,] 650 F.2d at 268.

61 Fed. Cl. 281, 284 (2004).

Plaintiff argues that the sovereign capacity doctrine as set forth in *Kania* applies only in the criminal context. Alternatively, plaintiff contends that the "sovereign/propriet[ary] distinction in *Kania* [has been recast as] a distinction between civil and criminal contracts to which the United States is a party." Pl. Br. at 20 (quoting *United States v. Zajanckauskas*, 346 F. Supp. 2d 251, 257 (D. Mass. 2003)). Relying on *Zajanckauskas*, 346 F. Supp. 2d at 258, in which the District of Massachusetts adopted the distinction between civil and criminal contracts as the basis for determining which government contract claims are cognizable under the Tucker Act, plaintiff argues that the sovereign capacity doctrine is inapplicable to this case because Mr. Trudeau's contract with the Government did not arise in the criminal context.

This Court is not bound by the opinion of the District of Massachusetts, and we decline to follow the decision in *Zajanckauskas*. Recent decisions of the Court of Federal Claims have continued to rely upon *Kania* and its progeny in holding that the relevant distinction is between government contracts entered into in a proprietary or sovereign capacity rather than whether a particular contract arose in a criminal or civil context. *See Awad v. United States*, 61 Fed. Cl. at 284; *Bailey v. United States*, 54 Fed. Cl. 459, 482-83 (2002) ("The existence of a criminal case does not make all related contracts actions of the sovereign . . . ."). If *Zajanckauskas* were correct, there would be no need for the Court of Federal Claims to continue to analyze whether contracts were entered into by the Government in its sovereign capacity. *See Pappas v. United States*, 66 Fed. Cl. 1, 7 (2005); *Awad*, 61 Fed. Cl. 281; *Houston v. United States*, 60 Fed. Cl. 597 (2004); *see also Miller v. United States*, 67 Fed. Cl. 195, 200 ( 2005) ("this court lacks jurisdiction over claims, such as plaintiff's treaty law claim, in which the government acts in its sovereign capacity").

To be sure, many of the contracts at issue in the *Kania* line of cases arose in the criminal context, *i.e.*, plea agreements, immunity agreements, and witness protection agreements. *Pappas*, 66 Fed. Cl. 1; *Silva*, 51 Fed. Cl. 374; *Sadeghi v. United States*, 46 Fed. Cl. 660 (2000); *Drakes v. United States*, 28 Fed. Cl. 190 (1993); *Grundy v. United States*, 2 Cl. Ct. 596 (1983) *Kania*, 227 Ct. Cl. 458, 650 F.2d 264. The *Kania* line of cases stands for the proposition that "activities of the criminal justice system . . . without question, lie at the heart of sovereign action." *Silva*, 51 Fed. Cl. at 377. However, the court in *Kania* did not draw a "civil/criminal" distinction in deciding whether the Tucker Act waived sovereign immunity for Mr. Kania's claim. *Kania*, 227 Ct. Cl. 458, 650 F.2d 264. In fact, in applying the sovereign capacity doctrine, the court relied on a principle frequently invoked in civil matters that "[t]he claimant for money damages for breach of an express or implied in fact contract must show that the officer who supposedly made the contract had authority to obligate appropriated funds." [3] *Id.* at 465,

---

[3] In *Kania*, the court found that the plaintiff had not made any attempt to show that the Government official at issue had the authority to make an agreement obligating the Government to pay money or specifying how the liability of the Government should be determined. *Id.* at 465, 268.

268. The court then stated:

> By the same line of reasoning, we would deem it possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement or one to grant immunity for giving testimony, or to protect a witness. But, in such case, the court would look for specific authority in the AUSA to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined.

*Id.* at 465, 268. The court noted that in the criminal context, the need for specificity was "the greater because the role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court." *Id.* However, nothing in the *Kania* court's reasoning limited the sovereign capacity doctrine exclusively to so-called "criminal" as opposed to "civil" contracts.

Alternatively, plaintiff contends that, even if *Kania* and cases following it were originally premised upon a sovereign/proprietary distinction, the Federal Circuit's decision in *Sanders v. United States*, 252 F.3d 1329 (Fed. Cir. 2001), "significantly recast" *Kania*'s holding and "made clear that a 'sovereign capacity' defense is available only in the criminal context." Pl. Br. at 17, 19-20. The Court of Appeals in *Sanders* did not undertake to overrule *Kania*, nor could it without reconsidering that decision en banc. *Bankers Trust New York Corp. v. United States*, 225 F.3d 1368, 1373 (Fed. Cir. 2000) ("Court of Claims cases, until overturned by [the Federal Circuit] en banc, are binding precedent"); *South Corp. v. United* States, 690 F.2d 1368, 1370 (Fed. Cir. 1982) ("[W]e deem it fitting, necessary, and proper to adopt an established body of law as precedent. That body of law represented by the holdings of the Court of Claims and the Court of Customs and Patent Appeals announced before the close of business on September 30, 1982 is most applicable . . . ."). Also, because the agreements in both *Kania* and *Sanders* were concerned with the conduct of the parties in a criminal case, it would have been unnecessary and illogical for the *Sanders* court to "recast" *Kania*'s holding. Thus, even if the opinion in *Sanders* contained language that one might argue was intended to "recast" the distinction between sovereign and proprietary capacities, such language would have been *dicta*, not binding precedent. *See Co-Steel Raritan, Inc. v. International Trade Comm'n*, 357 F.3d 1294, 1307 (Fed. Cir. 2004). The holdings of *Kania* and *Sanders* are therefore consistent, and do not suggest that the application of the sovereign capacity doctrine should be limited to contracts arising in the criminal context.[4]

---

[4] To the extent plaintiff argues that *Kania* and its progeny are wrongly-decided, *see* Pl. Br. at 21, this Court is required to follow Federal Circuit precedent. *See Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005) ("[T]he Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court. Trial courts are not free to make the law anew simply because they disagree with the precedential and

As indicated above, the Court of Federal Claims has followed *Kania* and its progeny in relying upon the sovereign/proprietary distinction. In *Awad v. United States*, the court declined jurisdiction and found that the issuance of a passport and granting of citizenship were actions undertaken by the Government in its sovereign capacity. 61 Fed. Cl. at 284-85. In that case, the Court of Federal Claims affirmed that "[t]his court has jurisdiction over most proprietary contracts, but generally does not have jurisdiction over contracts that the government makes in its sovereign capacity." 61 Fed. Cl. at 284. The *Awad* court's focus on distinguishing between contracts entered into in the Government's sovereign and proprietary capacities indicates that *Sanders* did not alter the outcome-determinative nature of that distinction.

The Court notes that the *Awad* decision has been the subject of recent criticism based on reasoning that "[t]he only reason for granting the sovereign immunity from suit is to prevent interference with sovereign affairs. Allowing a suit for money damages is not that type of case." *Dealing with the Sovereign: Risky Business*, 18 NASH & CIBINIC REPORT 53 (2005); *see also Postscript: Dealing With the Sovereign*, 19 NASH & CIBINIC REPORT 6 (2005) ("By a similar logic, the government could argue that the Tucker Act . . . disallows the Court of Federal Claims (and boards) from hearing disputes on fighter aircraft, submarine, and major weapons systems because there is no 'private analogue'.") (quoting *Awad*, 61 Fed Cl. at 284). However, prior to *Awad*, *Kania* set forth the following justification for holding the Government liable for contracts entered into in its proprietary capacity: "If the government insists on making itself the sole judge of law and fact in all disputes between its contractors and itself, the prices and terms it receives will compare unfavorably with those that [parties] obtain in [a] purely private transaction." *Kania*, 227 Ct. Cl. at 464, 650 F.2d at 268. Clearly, this justification is not applicable when the Government acts in its sovereign capacity, undertaking exclusively governmental functions without a private counterpart. *See Awad*, 61 Fed. Cl. 284. Furthermore, the relevant question is not whether there is a private counterpart to the specific good or service purchased by the Government, but rather whether the Government has "step[ped] off the throne and engag[ed] in the purchase and sale of goods, lands and services . . . ." *Kania*, 227 Ct. Cl. at 464, 650 F.2d at 268. As explained in *Bailey*:

> Prisons are related to the sovereign action of incarcerating persons convicted in the criminal justice system. The act of building the prison, however, is not a sovereign act but an act in which the sovereign has stepped off the throne and has engaged in the purchase of goods, lands and services.

54 Fed. Cl. at 483.

---

authoritative analysis of a reviewing appellate court."). There are only two "narrow exceptions" to that principle, neither of which is applicable here: if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision. *Strickland v. United States*, No, 05-5012, ___ F.3d ___, ___, 2005 WL 2241247 at *4 n.3 (Fed. Cir. September 16, 2005). Otherwise, a circuit court decision controls until the circuit court overrules it en banc. *Id.*

Having determined that the sovereign capacity doctrine is not limited to government contracts that arise in a criminal context, the Court must address whether the Government was acting in its sovereign capacity when it agreed to entry of the Stipulated Order upon which Mr. Trudeau bases his claim. The Government's action against Mr. Trudeau was a civil enforcement action. The Government was seeking to enforce a statute that, although not criminal, was specifically designed to protect the public from conduct that is illegal. The criminal context may be the paradigm case, but it is not the exclusive context in which the Government may enter into a contract in its sovereign capacity.

The FTC engages in law enforcement activities, such as enforcing the Nation's consumer protection laws, to prevent unfair or deceptive acts or practices in commerce. The sine qua non for this activity is protection of the public. *See FTC v. Klesner*, 280 U.S. 19, 27 (1929) ("to justify the Commission in filing a complaint under section 5, the purpose must be protection of the public"); *FTC v. Cinderella Career & Finishing Schools, Inc.*, 404 F.2d 1308, 1313 (D.C. Cir. 1968) ("the basic purpose of the Act is the protection of the public"); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 991 n.18 (D.C. Cir. 1973) ("[T]he Commission's role as both guardian and spokesman of the public interest has unquestioned vitality.") (citations omitted).

In order to permit the FTC to discharge its responsibilities, Congress vested the Commission with broad discretionary powers that are akin to prosecutorial functions. *See Klesner*, 280 U.S. at 27 (FTC exercises "functions of both prosecutor and judge"); *Holloway*, 485 F.2d at 991 ("The Commission was entrusted with a broad responsibility and discretion, prosecutorial in part, judicial in part . . . ."). For this reason, courts have uniformly held that there is no implied private right of action under the FTC Act. *See, e.g.*, *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981); *Naylor v. Case and McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978). As explained by the Court of Appeals in *Holloway*, "there is need to weigh each action against the Commission's broad range policy goals and to determine its place in the overall enforcement program of the FTC." *Holloway*, 485 F.2d at 997 (citations omitted). Because such functions are uniquely governmental in character, Congress created the FTC as the "exclusive enforcement authority" for violations of section 5. *Id.* at 998.

The purported contract upon which Mr. Trudeau relies was allegedly created when the FTC agreed to entry of the Stipulated Order in connection with the settlement of its enforcement action against Mr. Trudeau. The FTC initiated that action to prevent deceptive acts or practices and false advertising in violation of sections 5 and 12 of the Act. The FTC's purpose when it initiated, litigated, and later settled, the enforcement action was clear: to protect the public against deception by ensuring, through the remedies afforded by the FTC Act, that advertising conveys truthful information to the public.

By agreeing to entry of the Stipulated Order, the FTC vindicated this public interest. In so doing, it plainly did not "step[] off the throne and engage[] in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage

in among themselves." *Kania*, 227 Ct. Cl. at 464, 650 F.2d at 268. The FTC did not receive goods or services in exchange for its agreement to entry of the Stipulated Order, but instead obtained for the public a measure of protection against the dangers of false advertising. The FTC's efforts to obtain this relief, in and for the public interest, were undertaken by the Government in its sovereign, not proprietary, capacity.

## III. The Stipulated Order Did Not Contain an Unmistakable Promise to Subject the United States to Monetary Liability

The fact that the Government acted in its sovereign capacity, however, is not necessarily fatal to plaintiff's claim. In *Kania*, the Court of Claims held that a claim for money damages for the breach of a contract entered into by the Government in its sovereign capacity may be maintained if there is "specific authority . . . to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined." *Kania*, 227 Ct. Cl. at 465, 650 F.2d at 268. In *Sanders*, the Federal Circuit explained that liability on such a claim "could only exist if there was an unmistakable promise to subject the United States to monetary liability. This would require the same kind of express language (in both written and oral agreements) required by the unmistakability doctrine concerning government liability for the exercise of sovereign power." 252 F.3d at 1336.[5]

In this case, the purported contract between Mr. Trudeau and the United States does not "clearly and unmistakably" provide that the United States is liable for monetary damages in the event of breach. Instead, the purported contract is a judicial decree that restrains and enjoins Mr. Trudeau from engaging in certain business activities and practices. It contains no provision for the payment of money damages in the event of a breach by the Government. To the contrary, the "contract" embodied in the Stipulated Order is an instance where "monetary compensation by the government was not contemplated in the [a]greement . . . and was not contemplated as a remedy in the event of a breach." *Pappas*, 66 Fed. Cl. at 8. Accordingly, the purported contract did not spell out how such compensation was to be determined in the event of breach.

Because the Government, through the FTC, was acting in a sovereign capacity when it agreed to entry of the Stipulated Order and because plaintiff has failed to establish that the Stipulated Order contained an unmistakable promise to subject the United States to monetary liability in the event of a "breach" of that Order, *see Sanders*, 252 F.3d at 1336, this Court lacks subject matter jurisdiction over plaintiff's breach of contract claim.

---

[5] The unmistakability doctrine recognizes that "'sovereign power, even when unexercised, is an enduring presence that governs all contracts subject to the sovereign's jurisdiction, and will remain intact unless surrendered in unmistakable terms.'" *Klamath Irrigation Dist. v. United States*, ___ Fed. Cl. ___, ___, 2005 WL 2100579 at *29 n. 57 (August 31, 2005) (quoting *Bowen v. Pub. Agencies Opposed to Social Security Entrapment*, 477 U.S. 41, 52 (1986)).

## IV. The Court Need Not Address the Other Arguments Set Forth in Defendant's Motion to Dismiss

In its motion to dismiss, the Government argued that the district court's retention of jurisdiction over enforcement of the Stipulated Order divests this Court of jurisdiction over plaintiff's breach of contract claim. Def. Br. at 20-22. Having determined that we lack subject matter jurisdiction over that claim, the Court need not address the effect of the district court's retention of jurisdiction. The Court likewise need not address defendant's alternative arguments in support of its motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED. The Clerk is directed to enter judgment dismissing plaintiff's complaint pursuant to RCFC 12(b)(1).

IT IS SO ORDERED.

George W. Miller

GEORGE W. MILLER
Judge